Tammy ALLEN, Individually and as Representative of the Estate of Desmon Baldwin and all Statutory Beneficiaries under the Wrongful Death and Survivor Statutes, Appellants,

v.

Bob A. ROGERS, Individually and as General Partner for Timberline Apartments, Ltd., Timberline Apartments, Ltd., and Pacific Team Management Corporation, Appellees.

No. 2–97–081–CV.

Court of Appeals of Texas, Fort Worth.

July 16, 1998.

Rehearing Overruled Aug. 27, 1998.

Law Office of Joseph E. Ashemore, Jr. P.C., C. Gregory Shamoun, W. Charles Campbell, Dallas, for Appellants.

Shannon, Gracey, Rattliff & Miller, L.L.P., J. Wade Birdwell, R.H. Wallace, Jr., Jefferey J. Ansley, Mason & Boudloche, Deeia D. Beck, Fort Worth, for Appellees.

Before CAYCE, C.J., and DAY and HOLMAN, JJ.

## OPINION

CAYCE, Chief Justice.

### INTRODUCTION

In this wrongful death and survivorship premises liability case, we examine the nature of the duties owed by possessors of land and, more specifically, those associated with the landlord-tenant relationship. We must decide whether a landlord owes a duty to

protect a person from the criminal acts of a third party over whom the landlord has no control—if the injured party is neither the landlord's invitee nor on the property with a tenant's consent. Because we hold that a landlord owes no duty to the injured person under these circumstances, we affirm the trial court's judgment.

## BACKGROUND FACTS

Late on the night of February 27, 1995, two-year-old Desmon Baldwin was fatally shot during a drive-by shooting as he lay in the back of his mother's car. Baldwin's mother, Tammy Allen, was parked in the parking lot of the Vermillion Place Apartments (the apartments) when the shooting occurred. Other than providing the forum for this tragic event, the apartments had no connection with Baldwin, Allen, or the criminal responsible for Baldwin's death.

On February 27, Willie Clark, an acquaintance of Allen's, asked Allen to drive Clark to an unidentified friend's house. Allen did as Clark requested, taking Baldwin along in the car. When they arrived at the house, Allen and Baldwin stayed in the car while Clark went inside for a few minutes. Clark then returned to the car with a man whom he introduced as Ron. Clark asked Allen to take Ron to get a sweatshirt from a tenant at the apartments. Allen agreed to do so and drove to the apartments. Once there, Allen parked in the apartment parking lot but again stayed in her car. Baldwin also stayed in the car, lying down in the back seat. Ron got out of the car and went to visit a tenant, presumably to retrieve the sweatshirt. At first, Clark also stayed in the car, but he eventually got out to talk to some people he knew. At some point thereafter, a drive-by shooting occurred, and Baldwin was killed.

Allen was not a tenant of the apartments; she had never been to the apartment complex before the night of February 27. She does not contend that appellees had a duty to control the acts of the person who shot Baldwin, but only that appellees had a duty to use reasonable care to make the parking lot safe by protecting her and Baldwin from the dangers associated with gang activity.

## PROCEDURAL HISTORY

At the time of the shooting on February 27, the apartments were managed by Pacific Team Management Company, Inc. (Pacific). Pacific began managing the apartments on February 1, 1995. Timberline Apartments, Ltd. (Timberline) either managed the apartments until February 1 or owned them. Allen brought wrongful death and survivorship claims against Pacific, Timberline, and Bob A. Rogers, Timberline's general partner, alleging negligence and gross negligence. Rogers, Timberline, and Pacific moved for summary judgment on all of Allen's claims, which the trial court granted.

On appeal, Allen contends that summary judgment was improper because appellees owed her and Baldwin a duty to protect them from the criminal acts of others and because the summary judgment evidence raises a material fact issue about whether appellees breached that duty.

## DUTIES OF A LANDOWNER OR OCCUPIER

■ A common-law negligence cause of action has three elements: (1) a legal duty; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *See Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990). The threshold issue is the existence of a legal duty, which is a question of law for the court. *Praesel v. Johnson,* 967 S.W.2d 391, 394 (Tex.1998). Absent the existence of a duty to the complaining party, summary judgment is proper. *See Lefmark Mgmt. Co. v. Old,* 946 S.W.2d 52, 52 (Tex.1997); *Wofford v. Blomquist,* 865 S.W.2d 612, 614 (Tex.App.—Corpus Christi 1993, writ denied).

■ Generally, a landowner or one who is in control of property has no duty to protect another from the criminal acts of third parties who are not subject to the premises occupier's control. *See Exxon Corp. v. Tidwell,* 867 S.W.2d 19, 21 (Tex. 1993). However, there are some exceptions to this rule. First, one who occupies or controls property does have a duty to use ordinary care to protect invitees from criminal acts of third parties if the premises occupier knows or has reason to know of an

unreasonable and foreseeable risk of harm to the invitee. *See Lefmark,* 946 S.W.2d at 53; Restatement (Second) of Torts §§ 314 A(1)(a), (3), 315 (1965).

This duty to invitees has been applied in the context of the landlord-tenant relationship in situations where the landlord has retained the right to control part of the leased premises. *See Exxon Corp.,* 867 S.W.2d at 21. As to the part over which the landlord has retained control, the landlord owes its invitee—the tenant—a duty to use ordinary care to protect the tenant from injuries caused by an unsafe condition, including the unreasonable risk of harm from criminal intrusions. *See id.;* Restatement (Second) of Property § 17.3 & cmt. *l* (1977). The landlord owes this same duty to those who are on the premises with the tenant's consent. *See Exxon Corp.,* 867 S.W.2d at 21 (holding that landlord's duty to tenant extends to tenant's employees); *see also Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 514–15 (Tex.1978) (holding that landlord's duty of reasonable care extends to tenant's guests); Restatement (Second) of Torts § 360 & cmts. a, c (1965) (same).

Finally, one who retains control over property has a duty to comply with statutes and ordinances that are meant to deter criminal activity on the premises. *See Nixon v. Mr. Property Mgmt. Co.,* 690 S.W.2d 546, 549 (Tex.1985). A premises occupier or controller who commits an unexcused violation of a statute or ordinance is negligent per se if the statute or ordinance was designed to prevent injury to the class of persons to which the injured party belongs. *Id.*[1] An injured party's status is irrelevant to a negligence per se case. *See id.* Allen does not contend that appellees violated a statute or ordinance. Therefore, this exception does not apply to this case, and we need not address it.

In this case, neither Allen nor Baldwin was an invitee of appellees. An invitee is one who enters another's land with the owner's knowledge and for the mutual benefit of both. *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 536 (Tex.1975). Allen and Baldwin were not apartment tenants, they were not at the apartments to inquire about renting an apartment, and they were not on the premises with appellees' knowledge or for appellees' benefit. Instead, Allen merely drove to the apartments at Clark's request.

Allen argues that she and Baldwin were invitees because the apartment complex was "open to the public." However, as the cases upon which Allen relies plainly indicate, the term "open to the public" refers to a business or other commercial establishment holding its premises open to *business* invitees. *See Burton Constr. & Shipbldg. Co. v. Broussard,* 154 Tex. 50, 273 S.W.2d 598, 602 (1954); *Renfro Drug Co. v. Lewis,* 149 Tex. 507, 235 S.W.2d 609, 616 (1950); *Prestwood v. Taylor,* 728 S.W.2d 455, 458 (Tex.App.—Austin 1987, writ ref'd n.r.e.). While the apartment office was presumably open during certain hours to members of the public who were prospective tenants, there is no evidence that Allen was on the premises as a potential tenant. Moreover, at the time of the shooting, the apartments' business office was closed. The mere fact that the apartment parking lot was not gated and locked, or that tenants' guests may have been allowed to park there, did not render the apartments "open to the public" so as to confer invitee status on Allen and Baldwin.

In addition, Allen and Baldwin were not on the premises at the invitation or with the consent of an apartment tenant. Allen did not go to the apartments to visit a tenant, and neither Clark nor Ron were apartment tenants. Allen merely drove to the apartments at Clark's request to take Ron, a complete stranger, to retrieve a sweatshirt from a tenant. Allen asserts that Ron "obviously had the consent" of a tenant to be on the premises and argues that this consent "flowed" to her. However, whether Ron went to the premises with a tenant's

---

1. A determination that one who occupies or controls premises is negligent per se does not end the negligence inquiry. The fact finder must still decide the issues of proximate cause and damages. *See Nixon,* 690 S.W.2d at 549. The *Nixon* court discussed foreseeability only as it related to probable cause, not to duty. *See id.* at 549–51.

consent is not in evidence. In fact, there is no evidence from which to infer a tenant was even aware of Allen and Baldwin's presence at the apartments. A landlord has no duty to persons like Allen and Baldwin, who did not know any of the tenants, who did not have any tenant's consent to be on the property, and whose presence was completely unknown to any of the tenants. *See* RESTATEMENT (SECOND) OF PROPERTY § 17.3 & cmts. h, i (limiting landlord's liability to tenants and others lawfully on the leased premises with the tenant's consent); *see also* RESTATEMENT (SECOND) OF TORTS § 360 & cmt. e (limiting lessor's liability to "his lessee and others lawfully upon the land with the consent of the lessee").

▪ Relying on comment i to section 17.3, Allen invites us to hold that appellees owed her and Baldwin a duty, even if they did not have a tenant's consent to be on the premises, because they were lawfully in the parking lot. The latter part of comment i provides:

> However, the landlord *may* be subject to liability to others who are rightfully on the property, although they do not have the consent of the tenant, by analogy to the rule of this section and by extension of the rule for possessors of land in § 345 of the Restatement of the Law, Second, Torts.

*See* cmt. i (emphasis added).

Despite this language, nothing in comment i suggests that it was intended to include a person whose connection to the property is as attenuated as Allen's was. Examples listed in comment i include a landlord's friend or acquaintance who pays a social call or a policeman coming to arrest a tenant. Further, section 345 does not apply to this case because it deals with those who enter land in the exercise of a privilege, none of which are applicable to Allen. *See* RESTATEMENT (SECOND) OF TORTS § 345 (1965); *see also id.* §§ 191–211. We do not believe comment i applies to Allen's situation and will not use it to extend a landowner's or occupier's duties.

Allen relies on *Haight v. Savoy Apartments,* 814 S.W.2d 849 (Tex.App.—Houston [1 st Dist.] 1991, writ denied) and *Peeren-*

*boom v. HSP Foods, Inc.,* 910 S.W.2d 156 (Tex.App.—Waco 1995, no writ) as support for her position that appellees owed her and Baldwin a duty in this case. Neither case supports Allen's position.

In the *Haight* case, Rhonda Haight was sexually assaulted and murdered at the Savoy Apartments by Jay Smith, an off-duty employee. Haight's mother sued the apartments for negligence, but the trial court granted the apartments summary judgment. *See id.* at 851. The First Court of Appeals reversed, holding that the apartments owed Haight a duty to prevent her injuries at Smith's hands if Smith's criminal conduct was a foreseeable result of the apartments' negligence. *See id.* at 853. The court further held that the evidence raised a material fact issue concerning whether Haight's assault and death were foreseeable. *See id.* at 853–54.

We note several distinctions between *Haight* and this case. First, Rhonda Haight was apparently on the premises with the consent of an apartment tenant. On the evening of her death, Haight, Smith, and several other people gathered at Smith's home.[2] After drinking awhile, they decided to swim at the apartments, where one of the group lived. Late that night, Smith sexually assaulted and murdered Haight at the apartments. *See id.* at 852.

Second, the evidence in *Haight* showed that Smith had a prior criminal record, including a conviction for assaulting two individuals with a sledge hammer. However, the apartments did not conduct a criminal background check on Smith. Had the apartments checked, Haight's expert testified that information about Smith's criminal background would have been available by telephone or in writing. *See id.*

Third, the apartments allowed off-duty, off-premises employees like Smith uncontrolled access to the apartments for social activities. *See id.* at 853. These latter two factors raise an issue about whether the apartments had a duty to *control* Smith's actions, separate and apart from any duty to protect Haight. If an employer has a duty to

---

**2.** Smith did not live at the apartments. *See id.* at 852.

control an employee in particular circumstances, the employer may be liable to third parties injured by the employee's criminal acts that were reasonably foreseeable by the employer. *See Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 311 (Tex.1983); *Wheaton Van Lines, Inc. v. Mason*, 925 S.W.2d 722, 729–30 (Tex.App.—Fort Worth 1996, writ denied); RESTATEMENT (SECOND) OF TORTS §§ 315, 317 (1965).

The *Peerenboom* case is likewise inapposite to Allen's situation. It is in line with those cases in which a third party who had a special relation to the defendant told the defendant of an intent to harm a readily identifiable individual, thereby raising the issue of whether the defendant had a duty to warn the intended victim. *See Peerenboom*, 910 S.W.2d at 163–64 (evidence showed that restaurant employee who assaulted a 16–year–old co-employee had told restaurant's manager of his intentions to "mess with" a 16–year–old employee, but restaurant did not warn employee or her family). This situation has been addressed by numerous courts, particularly in the physician-patient context. *See, e.g., Praesel*, at 396; *Kehler v. Eudaly*, 933 S.W.2d 321, 327–31 (Tex.App.—Fort Worth 1996, writ denied) and cases cited therein; *see also Cain v. Cain*, 870 S.W.2d 676, 680 (Tex.App.—Houston [1 st Dist.] 1994, writ denied) (holding that child victim's uncle in whose home child visited had a duty to warn child's mother that another resident of the uncle's household was a convicted child molester, and to take other measures to prevent assault, because potential for harm to child was foreseeable). The case before us, however, does not fall into that category; accordingly, Allen's reliance on it is misplaced.

Because Allen and Baldwin were neither invitees of appellees nor on the premises with the consent of an apartment tenant, appellees did not owe Allen and Baldwin a duty to use reasonable care to prevent the shooting.[3] We overrule Allen's points and affirm the trial court's judgment.

3. Relying on *Lefmark*, Timberline argues that, because it was no longer managing the apartments when the shooting occurred, it no longer controlled the premises and therefore owed Allen and Baldwin no duty. *See Lefmark*, 946 S.W.2d at 54–55 (holding that former property manager was not liable absent responsibility for management at time of armed robbery). Because we cannot determine from the summary judgment record whether Timberline owned the apartments or was merely a former property manager, we do not address this argument.