Affirmed and Memorandum Opinion filed February 7, 2006









Affirmed and Memorandum
Opinion filed February 7, 2006.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00864-CV

____________

 

MARGARET NICHOLS, Appellant

 

V.

 

TANGLEWOOD MANOR
APARTMENTS, WESTWINDS GROUP, L.C., 

JON R. KUBAS, AND AMY KUBAS, Appellees

________________________________________________________

 

On Appeal from the 149th District Court

Brazoria County, Texas

Trial Court Cause No. 19669*RM02

________________________________________________________

 

M E M O R A N D U M  
O P I N I O N

In this
appeal stemming from a negligence action brought by appellant Margaret Nichols
against Tanglewood Manor Apartments (AManor Apartments@) and Westwinds Group, L.C., Jon R.
Kubas, and Amy Kubas (collectively, ATanglewood@), we examine the propriety of the
trial court=s grant of summary judgment in favor
of appellees.  Because we conclude that
Tanglewood did not owe Nichols a duty and did not proximately cause her
injuries, we affirm the trial court=s judgment.








I.  Factual and Procedural
Background

In 2000,
the Kubases purchased Manor Apartments, an apartment complex in Angleton,
Texas.  The property had been vacant for
approximately 18 months.  Before the
purchase, the Kubases examined the Manor Apartments and found that there had
been various instances of vandalism and that the complex was generally in an
uninhabitable state.  The Kubases then
retained an expert to research and report on the crime level in the area.  The expert reported that the area was
safe.  After the Kubases purchased Manor
Apartments, they endeavored to restore the property to leasing condition;
however, when the project became more extensive than expected, renovation
efforts became sporadic and eventually ceased. 

Before
and after the Kubases= purchase, Manor Apartments allegedly had a reputation in the
community as a haven for vagrants and criminal activity.  Although neighbors had called law enforcement
authorities on several occasions, the police never found anyone on the Manor
Apartments premises.  The Kubases lived
in Houston and visited the Manor Apartments approximately once weekly, only
during daytime hours, and never saw anyone on the premises during their visits.








In 2001,
Nichols was living at her mother=s house, which was located on
property adjoining the Manor Apartments. 
Nichols alleges that, on June 18, 2001, she went into her backyard and
was grabbed by a person she describes as a vagrant.  She stated that she recognized him as the man
she had reported to police several days earlier as living at Manor
Apartments.  Nichols alleges that the
assailant pulled her into her mother=s home, where he tied her hands and
feet, and hit her in the mouth, before attempting to rape her.  When he was unsuccessful, he stole items from
the house and left.  Nichols reported the
incident to police and, during the investigation, underwent hypnosis by police
to recollect details of the assault. 
While under hypnosis, Nichols remembered seeing her assailant at a
nearby convenience store before the assault, but did not report having seen him
at the Manor Apartments.  Tanglewood was
not notified of this incident. 

On
August 5, 2001, the same man allegedly returned to Nichols=s home.  He came into her bedroom and sexually
assaulted or raped her at gunpoint. 
Nichols reported the incident to police, but investigating officers
found insufficient evidence to pursue the matter.

Shortly
thereafter, an Angleton newspaper published 
an article describing certain conditions at Manor Apartments; namely,
ongoing problems with vagrants living at the property and criminal conduct
extending back over the preceding two years. 
The article stated that neighbors, police, and city officials were
frustrated with problems at the Manor Apartments premises.  The article contained pictures of bedding and
empty cups found in rooms at Manor Apartments. 
The article also included an interview with Carol Holland, Tanglewood=s office manager, who stated that she
had called the police on several occasions but that police never found anyone
at Manor Apartments.

Nichols filed a common law negligence action suit
against Tanglewood for Acreating
the dangerous conditions that resulted in the assaults.@  Tanglewood moved for a traditional summary
judgment, asserting that it did not owe Nichols a duty and that Tanglewood=s conduct
was not the proximate cause of Nichols=s
injuries. The trial court granted summary judgment in favor of Tanglewood and
this appeal ensued.

II.  ISSUE PRESENTED








Nichols presents a single issue, arguing that the
trial court erred in granting the motion for summary judgment.  In her brief, Nichols concedes that whether
one person owes a duty to another is generally a question of law, but argues
that it becomes a question of fact where the determination of the existence of
a duty depends upon disputed facts regarding the foreseeability of injury.  Nichols argues that the summary judgment
evidence raised a material fact issue as to whether injury to a resident of an
adjoining property was foreseeable to the landowner,[1]
and should therefore be submitted to a jury as a matter of law.

III.  Standard of Review

In a traditional motion for summary judgment, the
movant has the burden of showing that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law.  Am. Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997).  When reviewing a summary judgment, we
take as true all evidence favorable to the nonmovant, and we indulge every
reasonable inference and resolve any doubts in the nonmovant's favor.  Joe v. Two Thirty Nine Joint Venture,
145 S.W.3d 150, 157 (Tex. 2004).  Under
Texas Rule of Civil Procedure 166a(c), a party moving for traditional summary
judgment bears the burden to show that no genuine issue of material fact exists
and that it is entitled to judgment as a matter of law.  Id.  We affirm the summary judgment if any of the
theories presented to the trial court is sufficient to sustain the
judgment.  Id.  Traditional summary judgment for a defendant
is proper only when the defendant negates at least one element of each of the
plaintiff=s theories of recovery, or pleads and
conclusively establishes each element of an affirmative defense.  Sci. Spectrum, Inc. v. Martinez, 941
S.W.2d 910, 911 (Tex. 1997); Castillo v. Westwood Furniture, Inc., 25
S.W.3d 858, 860 (Tex. App.CHouston [14th Dist.] 2000, no pet.).

IV.  Analysis








Nichols contends on appeal that
Tanglewood failed to establish as a matter of law that it is entitled to
summary judgment on her negligence claim. 
A common law negligence cause of action requires proof that (1) the defendant
owed a legal duty to the plaintiff, (2) the defendant breached that duty, and
(3) the breach proximately caused the plaintiff=s injury.  D. Houston Inc. v. Love, 92 S.W.3d
450, 454 (Tex. 2002).  The threshold
issue in a negligence action is duty.  Greater
Houston Transport v. Phillips, 801 S.W.2d 523, 525 (Tex. 1990).  Whether a duty exists is a question of law
for the court to determine.[2]  Tri v. J.T.T., 162 S.W.3d 552, 563
& n.25 (Tex. 2005).








Nichols relies on several cases applying the general rule that a
person who affirmatively creates an unreasonable risk of harm owes a duty to
foreseeable victims to prevent the harm. 
See, e.g., El Chico Corp. v. Poole, 732 S.W.2d 306, 312 (Tex.
1987) (stating, Athe common law recognizes the duty to take affirmative action to
control or avoid increasing the danger from another's conduct which the actor
has at least partially created@); Golden Spread Council, Inc. No. 562 of Boy Scouts of America
v. Akins, 926 S.W.2d 287, 292B93 (Tex. 1996) (finding a duty to use reasonable care in recommending
a potential scoutmaster to a church to prevent an unreasonable risk of harm to
those who would be affected by his conduct). 
But, these cases are inapplicable here, because there is no legal or
factual basis on which to conclude that Tanglewood affirmatively created a risk
that Nichols or any similarly-situated person would be sexually assaulted.

Duty is not based on
foreseeability alone.  Factors a court
may consider in determining whether a duty exists include whether one party has
superior knowledge of the risk, and whether a party has a right to control the
actor whose conduct precipitated the harm. 
Graff v. Beard, 858 S.W.2d 918, 920 (Tex.
1993).  Here, Nichols had superior
knowledge because she knew of an alleged attempted sexual assault by the same
perpetrator, against the same victim, and on the same propertyCher own.  There is no evidence that Tanglewood had such
knowledge, or that even if it had such knowledge, it could have prevented the
assault.  

Generally, Aa person has no legal duty to protect another from the criminal
acts of a third party.@  Timberwalk Apartments,
Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex. 1998).  However, under certain circumstances, an
exception exists in that one who controls property has a duty to use ordinary
care to protect against foreseeable criminal acts on the premises.  Allen v. Rogers, 977 S.W.2d 733, 735B36 (Tex. App.CFort Worth 1998, pet.
denied) (emphasis added).  That exception
has no application here, where the crime occurred on the victim=s own property.

A.        Was the danger of the particular criminal conduct
foreseeable?

We determine whether the
criminal conduct was so foreseeable to the landowner as to impose a duty by
first examining Athe particular criminal
conduct that occurred in light of >specific previous crimes
on or near the premises.=@  Mellon Mortgage Co. v. Holder, 5
S.W.3d 654, 656 (quoting Walker v. Harris, 924 S.W.2d 375, 377 (Tex.
1996)).  Only Athe general danger, [and]
not the exact sequence of events that produced the harm [must] be foreseeable.@  Walker, 924 S.W.2d at 377.








Tanglewood contends that
it had no reason to know of a general danger of violent criminal conduct
because it had no notice of any such incidents. 
Tanglewood=s summary judgment
evidence consists of the depositions of Jon Kubas, Nichols, and Steven
McEntire, a neighbor of Nichols.  In his
deposition, Kubas states that he had no knowledge of alleged vagrants living at
the Manor Apartments nor of any criminal conduct afoot.  Kubas said that he traveled to the building
once weekly, during the day, and never saw anything beyond debris in the
units.  Further, Kubas stated that no one
had ever reported any problems to Tanglewood. 
In her deposition, Nichols admitted she had never contacted Tanglewood
and had not reported the first assault to them. 
Nichols testified that neighbors had made numerous calls to the police
about vagrants living at the Manor Apartments, but also states that, to her
knowledge,  police never found anyone at
the Manor Apartments and had never arrested anyone on the premises.  McEntire testified that he had called police
in the past regarding activities at Manor Apartments.  However, the thefts McEntire allegedly
suffered occurred in the years before the Manor Apartments closed.  Past incidents do not make future crime
foreseeable unless the property owner knows or should have known that the
incidents occurred.  Timberwalk,
972 S.W.2d at 759. 








In response to Tanglewood=s motion for summary
judgment, Nichols introduced evidence consisting of her own deposition; the
depositions of Jon Kubas and Steven McEntire; a newspaper article; and the
affidavit of Edmund J. Pankau, a licensed private investigator and security
consultant.  In his affidavit, Pankau
attests that he examined the records of the Angleton Police Department and that
those records reflect that there have been Afrequent calls for police
services in the vicinity of Tanglewood Manor Apartments.@  Call reports, however, are not necessarily
probative of actual crimes. See Tex. Real Estate Holdings, Inc. v. Quach,
95 S.W.2d 395, 399 (Tex. App.CHouston [1st Dist.] 2002,
pet. denied) (A[c]all reports include
hang-up calls, mistake calls, missing person calls, information calls, calls
for medical assistance, and calls to report suspected criminal activity@).  More importantly, Pankau does not
explain  the nature, frequency, and
recency of these alleged crimes.  See
Timberwalk, 972 S.W.2d at 757B58 (requiring these
elements as factors in the analysis because foreseeability depends on
establishing that the landowner had notice of the danger).  Pankau asserts that, had Tanglewood inspected
police records, it would have known about the incidents.  But, A[l]andowners have no duty
to regularly inspect criminal records to determine the risk of crime in the
area.@  Id. at 759.  Nevertheless, if the occurrences are widely
publicized, a landlord can be expected to have knowledge of such crimes.  Id. 
Here, Nichols=s summary judgment
evidence includes an article in the local paper reporting a criminal element at
Manor Apartments and ongoing efforts to curb the problem by neighbors, police,
and city officials.  The article, however,
is dated August 26, 2001, which is after the alleged attacks on Nichols.  Whether a risk was foreseeable is not
determined in hindsight; rather, it is determined in light of what the property
owner knew or should have known before the criminal act occurred.  Id. at 757.  

A matter is conclusively
established if reasonable minds cannot differ as to the conclusion to be drawn
from the evidence.  Triton Oil &
Gas Corp. v. Martinez Contractors & Supply, Inc., 644 S.W.2d 443, 446
(Tex. 1982).  After examining the evidence
presented and indulging every reasonable inference in favor of Nichols, we
agree with the trial court that reasonable minds cannot differ in concluding
that Tanglewood could not have foreseen an unreasonable risk of danger of
violent crime, such as the sexual assault or rape that occurred here, based on
this evidence.  Once Tanglewood provided
sufficient evidence to establish a right to summary judgment on the duty
element of Nichols=s claim, the burden
shifted to Nichols to produce sufficient evidence to raise a fact issue.  Walker, 924 S.W.2d at 377.  Nichols failed to raise such fact issue.

B.        Was
it foreseeable that Nichols, or one similarly situated, would be the victim of
the criminal act?

 








Even assuming Tanglewood
knew that vagrants frequented Manor Apartments and was aware that criminal
conduct was occurring on the premises, this does not suggest that Tanglewood
should have had reason to believe that Nichols, or a person similarly situated,
would be subjected to a sexual assault away from the premises.  Tanglewood asserts that it had no control
over the premises where the criminal conduct occurred (Nichols=s residence), and had no
knowledge of or control over the alleged assailant. 

In support of its motion
for summary judgment, Tanglewood cites LaFleur v. Astrodome-Astrohall
Stadium Corp., 751 S.W.2d 563 (Tex. App.CHouston [14th Dist.]
1988, no writ).  In LaFleur, a
news reporter brought a negligence action against the owner of a stadium after
she was assaulted while leaving the grounds. 
Id. at 563.  The incident
occurred across the street from the stadium. 
Id.  The owner argued that
it did not own, occupy, or otherwise control the property where the assault
occurred and, therefore, it did not owe a duty to the reporter.  Id. at 564.  The trial court rendered summary judgment in
favor of the owner because it found that there was no duty to protect the
reporter from an incident that occurred away from the owner=s premises.  Id. 
The appellate court agreed, holding that Aliability for a
third-party=s criminal acts requires
a showing of the defendant=s control of [the]
premises.@  Id. 
Here, as in LaFleur, Tanglewood conclusively showed by
deposition testimony that it did not own, occupy, or otherwise control the
premises where the third-party assault occurred.  Id. at 565B66 (holding that any duty
does not extend beyond the limit=s of the landowner=s control).

Nichols counters with a
general assertion that, because several reports of criminal activity had been
filed with Angleton Police Department, a fact issue was raised as to whether
Tanglewood knew or should have known of the risk of injury to residents of
adjoining properties.  However, as stated
above, there are no such reports in the record, and no evidence regarding the
nature of any such criminal activity, such as the similarity of any such crimes
to the crime alleged here, whether arrests resulted from the reports, where the
conduct occurred in relation to the Manor Apartments, or the frequency or
recency of violent criminal activity.  See
Timberwalk, 972 S.W.2d at 757B58.  Further, as noted, Tanglewood had no duty to
inspect police records.  Id. at
759.  In addition, Nichols failed to
report the first assault to Tanglewood. 








Nichols refers this court
to a series of cases holding landowners liable for injuries that occur away
from their premises; however, these cases involve actors over whom the
landowners had some right of control, such as an employee who caused harm that
eventually befell an invitee after leaving the premises.  Duty is Acommensurate with the
right of control.@ Lefmark Mgmt. Co. v.
Old, 946 S.W.2d 52, 53B54 (Tex. 1997).  In addition, Nichols cites Nixon v. Mr.
Property Management Co. for the proposition that the owner of a vacant
apartment building owes a duty to public. 
690 S.W.2d 546, 549 (Tex. 1985). 
In Nixon, a vacant apartment building was left unsecured and the
units were filled with dirt and debris.  Id.
at 548.  Police had investigated
numerous crimes committed on the premises. 
Id.  When a minor was
abducted from a sidewalk, taken to a unit at the complex, and raped, her mother
brought suit on her behalf against the owner of the building.  Id. at 547.  The suit alleged that the owner owed the
child a duty of reasonable care, which it breached.  Id. at 548.  The Texas Supreme Court reasoned that the
purpose of keeping vacant buildings secure is to prevent injury to the general
public and that, in allowing the vacant complex to erode into such a
dilapidated condition, the premises became a conspicuous opportunity for crime.[3]  Id. at 549. However, Nichols cites no
authority, and we find none, for the proposition that a landowner can be held
accountable for the actions of an unidentified assailant that occur away
from the landowner=s premises.  Nothing in Nichols=s summary judgment
evidence suggests that Tanglewood could have reasonably foreseen that an
assailant would enter Nichols=s home, away from the
premises of Manor Apartments, and commit a sexual assault or rape.  She provides no evidence of a foreseeable
risk in relation to her to refute Tanglewood=s  assertions. 
See Mellon, 5 S.W.3d at 658. 


 








In sum, because
Tanglewood established a right to summary judgment on the duty element of
Nichols=s claim, the burden
shifted to Nichols to raise a fact issue. 
Walker, 924 S.W.2d at 377. 
We conclude that Nichols=s evidence failed to
raise such fact issue and that the risk that Nichols or a similarly situated
person would be sexually assaulted was in no way foreseeable to
Tanglewood.  Hence, we hold that as a
matter of law, Tanglewood did not owe a duty to Nichols and was entitled to
summary judgment.

C.  Was the Condition that Harmed Nichols
Created on Tanglewood=s Property?

Nichols argues that a
person can be held liable Afor the conduct created
on their premises@ that causes harm off the
premises.  See, e.g., D. Houston, Inc., 92 S.W.3d at 457
(employer could be responsible for drunk-driving accident where it encouraged
independent contractor to get drunk as part of her job); Texas Home Mgmt.,
Inc. v. Peavey, 89 S.W.3d 30, 33B39 (Tex. 2002) (owner/manager of a mental health/mental
retardation facility had a duty not to allow a resident known to have a lengthy
history of assaults, theft, and weapons violations to be unsupervised on visits
to other cities); El Chico, 732 S.W.2d at 314 (bar owner could be found responsible for
serving alcohol to intoxicated patron who caused accident); Otis Eng=g Corp. v. Clark, 668 S.W.2d 307, 311
(Tex. 1983) (employer could be found negligent for putting a drunk employee on
the roadway where he caused an accident); Atchison v. Tex.
Pac. Ry. Co., 143 Tex. 466, 474, 186 S.W.2d 228,
232 (1945) (railroad company could be liable for accident caused in part by
smoke from grass fire on its property that obscured vision of drivers on
adjacent road); Silva v. Spohn Health Sys. Corp., 951 S.W.2d 91, 93B97 (Tex. App.CCorpus Christi 1997,
writ den=d) (landowner could
be liable for accidents occurring on the street adjacent to its property if it
had the power to control and expel third‑party wrongdoers).  It is her position that the sexual assault
was Aconduct created on
[Tanglewood=s] premises,@ thereby giving rise to a duty.








None of these cases,
however, address a special set of inchoate Aconduct created on [the
landowner=s] premises@ as suggested by
Nichols.  In Otis, El Chico,
and D. Houston, Inc., the conduct of the defendant on his own premises
foreseeably rendered another person more dangerous; there is no such evidence
here.  To the contrary, there is no
evidence Tanglewood knew of the existence of the alleged assailant or did
anything to render him more dangerous. 
In Atchinson, no Aconduct@ was created at all;
rather, a dangerous physical condition on the premises was not contained to the
premises.  Nichols does not claim to have
been injured by a physical condition of Tanglewood=s premises.  In Texas Home Mgmt. and in Silva,
the defendants had voluntarily undertaken to exercise control over specific
people or specific areas where the injury actually occurred.  None of these conditions are present in the
instant case.  Here, Tanglewood had no
right to control the instrumentality (the attacker), the conduct (the assault),
or the premises where the harm occurred (Nichols=s home). 

D.        Was Tanglewood=s Alleged
Conduct a Proximate Cause of Nichols Injury?

Even if we were to assume
that Tanglewood owed Nichols a duty to obtain police reports and investigate
the status of criminal conduct in the area, there is no evidence that a breach
of that duty proximately caused the assaults on Nichols.

Proximate cause requires
(1) cause in fact, and (2) foreseeability. 
W. Invs., Inc. v. Urena, 162 S.W.3d 547, 551 (Tex. 2005).  Cause in fact requires a showing that Athe act or omission was a
substantial factor in causing the injury without which the harm would not have
occurred.@  Id. 
The defendant=s negligence must have
done more than simply furnish a condition that made injury possible.  Id. 
Here, Nichols asserts that Tanglewood should have been more
expedient with renovations, should have better repaired its fencing, and should
have kept abreast of criminal conduct in the area.  However, Nichols has not shown that any of
these measures would have prevented the alleged perpetrator from coming into
her home and assaulting her.  As to the
second element, we have already determined that there was no evidence of a foreseeable
risk to Nichols.  See Mellon, 5 S.W.3d
at 659 (holding that the foreseeability analysis is the same for both duty and
proximate cause).








Accordingly, we overrule
Nichols=s sole issue.

V.  Conclusion

Nichols places her
reliance primarily upon two classes of cases: those in which the plaintiff was
injured by a person under the defendant=s control, and those in
which the plaintiff was injured by or on the property itself.  There is no such nexus in the present
case.            Having
concluded that the trial court did not err in granting summary judgment in
favor of Tanglewood because (1) Tanglewood provided sufficient evidence that it
owed no legal duty to Nichols and was not the proximate cause of Nichols=s injuries, and (2)
Nichols has failed in her evidence to raise a material fact issue on the
elements of duty and proximate cause, we affirm the trial court=s judgment.

 

/s/        Eva
M. Guzman

Justice

 

Affirmed and Memorandum
Opinion filed February 7, 2006.

Panel consists of
Justices Fowler, Edelman, and Guzman.

 











[1]  Nichols states
in her brief that her suit is not to be considered a premises liability action;
rather, she brought her suit as a common law negligence action.





[2]  Nichols
initially contends that summary judgment should be reversed because an
exception to this threshold rule applies. 
Nichols argues that the Texas Supreme Court has recently recognized that
Aif the essential facts about foreseeability as an
element of . . . duty are disputed, the question is a fact issue for the jury.@  Union Pac.
R.R. Co. v. Williams, 85 S.W.3d 162, 166 (Tex. 2002).  We find the exception inapplicable here.  In Humble Sand & Gravel Inc. v. Gomez,
the Texas Supreme Court explained that there are some instances in which Aissues may turn on facts that cannot be determined as
a matter of law and must instead be resolved by the factfinder,@ but also stated Awe have
actually identified only one such instance.@  146 S.W.3d 170, 182 & n.22 (Tex. 2004)
(citing Fort Bend County Drainage Dist. v. Sbrusch, 818 S.W.2d 392, 395
(Tex. 1991)).  Fort Bend makes the
same statement but does not apply it; instead the Court supported its statement
by relying on Mitchell v. Missouri-Kansas-Texas R.R. Co., 786 S.W.2d
659, 662 (Tex. 1999) (a Federal Employers=
Liability Act (AFELA@) case), overruled on other grounds by Union
Pacific R.R. v. Williams, 85 S.W.3d 162, 168B69 (Tex.
2002) (another FELA case).  See Fort
Bend, 818 S.W.2d at 395.  In Humble,
the Court explained that Awhile the issue of >whether
a legal duty exists, including the foreseeability element, is typically a legal
question [in FELA actions in Texas courts] . . . , if the essential facts about
foreseeability are disputed, the question is a fact for the jury.=@ Humble, 146 S.W.3d at 182 (citing Union
Pacific, 85 S.W.3d at 166).  The
Court further stated that it had not had Aoccasion
to consider how the burden of proving facts related to the existence of a duty
should be assigned when those facts are in dispute. . . . when the
foreseeability of harm is an element of duty and factually disputed, . . . we
have put the burden on the plaintiff.  Id.
at 182B83.  Humble
examined the duty to warn and remanded the case for a new trial because the
record was undeveloped on an issue that the court opined was crucial and the
court was unable to draw any inferences. 
Id. at 195.  This is not
the case here.  Tanglewood produced
evidence establishing that the assault was not foreseeable, and the evidence
submitted by Nichols was insufficient to raise a question of fact.





[3]  In Nixon,
the Court found that a duty existed based on the violation of a city ordinance
that specifically required a property owner to keep the doors and windows of a
vacant structure closed to prevent unauthorized entry.  In contrast, there is no evidence that
Tanglewood was subject to any similar law, nor 
were the premises the scene of the alleged crime.