Joseph William KELLY, Sr. and Kathleen Kelly Jarrett, Individually and as heirs of Joseph William Kelly, Jr., deceased; and Michael O. Stinson, Individually and on behalf of the Estate of John Michael Stinson, deceased, Appellants,

v.

LIN TELEVISION OF TEXAS, L.P.; LIN Television of Texas, Inc.; LIN Broadcasting Corp.; KXTX of Texas, Inc.; KXTX, Inc.; Christian Broadcasting Network, Inc.; KXAN, Inc.; and North Texas Broadcasting Corp., Appellees.

No. 11–99–00128–CV.

Court of Appeals of Texas, Eastland.

Aug. 17, 2000.

Michael George Mahan, James Alexander McCorquodale, Vial, Hamilton, Koch, & Knox, Dallas, for appellant.

David C. Myers, Jackson & Walker, Dallas, for appellee.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

TERRY McCALL, Justice.

The owners of a 1,500–foot television tower hired an independent contractor to replace an old broadcasting antenna with a new one. While the contractor was hoisting a 10,000 pound piece of equipment up the tower, the piece of equipment broke away from the tower and fell against a guy wire, and the tower collapsed. Two of the independent contractor's employees were killed. Their parents sued the present tower owner and the prior owners for negligently maintaining the tower and for negligently misrepresenting the dangerous condition of the tower.

■ TEX. CIV. PRAC. & REM. CODE ANN. ch. 95 (Vernon 1997), adopted in 1996, covers negligence claims against a property owner for the death or injury of a contractor's employee that arise "from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement." Section 95.002(2). If Section 95.002(2) applies and if the employee's death stems from a failure to provide a safe workplace, the plaintiff must prove that the property owner exercised or retained some control over the manner in which the work was performed and that the property owner had actual knowledge of the danger or condition resulting in the personal injury or death and failed to adequately warn of that danger. Those two conditions must be met before liability will be imposed upon the property owner. Section 95.003.

The two principal questions presented by this appeal are: (1) whether Chapter 95 applies when plaintiffs claim that the workplace contained a dangerous condition prior to the independent contractor beginning work and (2) if Chapter 95 does apply, whether the plaintiffs introduced some evidence to meet the two conditions of Section 95.003. We find that Chapter 95 applies in this case, that plaintiffs failed to introduce evidence that the tower owner exercised or retained control over the contractor's work to rebut the tower owner's evidence of no control, and that there is no evidence that the owner knew of the tower's alleged dangerous condition. We further find that the prior owners owed no duty to the decedents. Therefore, we affirm the summary judgments granted to the appellees.

### Background Facts

LIN Television of Texas, L.P., the broadcast tower owner, hired Doty–Moore Tower Services, Inc., an independent contractor, to remove an existing transmission line and television antenna from the tower and replace it with a new transmission line and antenna. For five months prior to the accident, Doty–Moore's employees were regularly on the tower performing the necessary work.

Doty–Moore decided to use a gin pole to hoist the antenna. The gin pole was 100 feet long and weighed over 10,000 pounds. To raise the gin pole, Doty–Moore employees "jumped" the pole by using a hoist, located near the base of the tower, which raised the pole with a steel cable. The crew was in the process of "jumping" the pole to an elevation higher than 1,200 feet when the accident occurred. During the jump process, one Doty–Moore employee frantically radioed another crew member,

the hoist operator, urgently imploring him to lower the gin pole. The hoist operator, aware that something was wrong, looked up and saw the pole lean to a horizontal position, break free, and fall away from the tower, which remained standing for a few moments. The hoist operator saw the gin pole fall more than 200 feet and hit a guy wire and then saw the tower collapse.

■ Plaintiffs claim that the defendants did not have a structural engineer or a metallurgist make regular tower inspections for structural fatigue.[1] The failure to inspect the tower constituted negligence because, over time, the tower developed many stress fractures that weakened its structure. The stress fractures were caused by the placement of antennae on the tower that caused the tower to twist, by structural tower members not being repaired timely, by a broken transmission line banging against the tower, and by severe windstorms. Plaintiffs' experts concluded that the tower's stress fractures made the tower dangerous and that the poor condition of the tower caused its collapse. Plaintiffs claimed negligence, negligence per se, res ipsa loquitur, negligent misrepresentation, fraudulent misrepresentation, and constructive fraud.[2]

Defendants moved for a traditional summary judgment on the grounds that the current tower owners were not liable because of the application of Section 95.003(1) and that the prior owners owed no duty to the deceased employees. Defendants also moved for a no-evidence summary judgment on the following grounds. First, plaintiffs failed to produce evidence showing that LIN had actual knowledge of the tower's dangerous condition as required by Section 95.003(2). Second, plaintiffs failed to produce evidence demonstrating that any negligence of the defendants was a proximate cause of the tower's collapse. Defendants claimed that plaintiffs' experts failed to demonstrate how the stress fractures supported an inference that the tower was so weak that its collapse was due in part to its weak structure.[3] And third, plaintiffs produced no evidence of any fraudulent misrepresentation or constructive fraud. The trial court relied upon these grounds to grant summary judgments to defendants.

### Standard of Review

■ Defendants' motion for summary judgment intermixed a motion for traditional summary judgment under TEX. R.CIV.P. 166a(c) and a motion for a "no-evidence" summary judgment under Rule 166a(i). The better practice is to file separate motions relating to the conceptually distinct Rule 166a(c) and Rule 166a(i) summary judgments. *Grant v. Southwestern Electric Power Company*, 20 S.W.3d 764 (Tex.App.—Texarkana 2000, pet'n filed). Under a motion for a "no-evidence" summary judgment, we review only the evidence presented by the non-movant. Rule 166a(i). Analysis is made more difficult when it appears that the movant may be relying on his or her summary judgment evidence yet is asserting that there is no evidence on a particular element of the non-movant's case. Nevertheless, we will discuss each ground for summary judgment as if presented in separate motions.

A trial court must grant a motion for a traditional summary judgment if the moving party establishes that no genuine issue

1. Plaintiffs settled with one structural engineer who apparently had inspected the tower.

2. Plaintiffs' failure to brief their constructive fraud point of error waives it. *Brandon v. American Sterilizer Company*, 880 S.W.2d 488, 493 (Tex.App.—Austin 1994, no writ).

3. Defendants also contend that a conclusion that the tower collapsed because of its weak-ened structure requires stacking of inferences that is prohibited. *Texas Sling Company v. Emanuel*, 431 S.W.2d 538 (Tex.1968). Plaintiffs' metallurgist tested only portions of the tower, and one must infer that the stress fractures would have been found throughout the tower. Then, one must infer from that inference that the tower's weakened condition caused the collapse when the gin pole hit the guy wire.

of material fact exists and that the moving party is entitled to judgment as a matter of law. Rule 166a(c); *Lear Siegler, Inc. v. Perez*, 819 S.W.2d 470, 471 (Tex.1991). A trial court properly grants summary judgment in favor of a defendant if the defendant conclusively establishes all elements of an affirmative defense or conclusively negates at least one element of the plaintiff's claim. *American Tobacco Company, Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). When reviewing a traditional summary judgment, we take as true evidence favorable to the non-movant and indulge every reasonable inference and resolve any doubts in favor of the non-movant. *American Tobacco Company, Inc. v. Grinnell, supra; Nixon v. Mr. Property Management Company, Inc.*, 690 S.W.2d 546, 548–49 (Tex.1985).

We review evidence presented by the non-movant in reply to a motion for a no-evidence summary judgment just as we review evidence offered in support of, and in response to a motion for, a traditional summary judgment: we accept as true evidence favorable to the non-movant and indulge every reasonable inference and resolve all doubts in favor of the non-movant. *Hight v. Dublin Veterinary Clinic*, 22 S.W.3d 614 (Tex.App.—Eastland, June 8, 2000, no pet'n h.); see *American Tobacco Company v. Grinnell, supra* at 425. We review, however, only evidence presented by the non-movant. Rule 166a(i); *Hight v. Dublin Veterinary Clinic, supra*. If the non-movant presents evidence that is more than a mere scintilla, a no-evidence summary judgment is improper. *Hight v. Dublin Veterinary Clinic, supra; Denton v. Big Spring Hospital Corporation*, 998 S.W.2d 294, 298 (Tex.App.—Eastland 1999, no pet'n); cf. *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

### The Principal Issues

In their first two issues, plaintiffs claim that the trial court erred in granting summary judgment for the following reasons. Chapter 95 does not apply to this case but, if it does apply, plaintiffs have shown that LIN retained control of the workplace and that LIN had actual knowledge of the dangerous tower and failed to warn the tower crew. Second, plaintiffs claim that their evidence was sufficient to raise a fact question as to whether the defendants' negligence proximately caused the tower's collapse. Third, plaintiffs claim that the prior owners owed a legal duty to the deceased employees and that the evidence was sufficient to show the prior owners' negligence in maintaining the tower. Fourth, the plaintiffs claim that their evidence was sufficient to raise a fact issue as to each element of the negligent misrepresentation and fraudulent misrepresentation claims.

### Rule 166a(c) Summary Judgment Grounds

The initial question faced by the trial court was whether Chapter 95 applies to this case.

### 1. *Applicability of Chapter 95*

Section 95.001 defines a "claim" as a "claim for damages caused by negligence." Plaintiffs' claims asserting negligence, negligence per se, res ipsa loquitur, and negligent misrepresentation are all claims for damages based upon negligence.

Section 95.002 defines the scope of Chapter 95 and states that the chapter applies only to a negligence claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from *the condition or use* of an improvement to real property where the contractor or subcontractor constructs, *repairs, renovates, or modifies* the improvement. (Emphasis added)

■ Plaintiffs argue that Chapter 95 does not apply because the dangerous condition of the tower arose before Doty–Moore was hired to work on the tower; therefore, defendants had a duty to warn the Doty–Moore employees of that danger. We disagree. Plaintiffs are relying on cases where the accident occurred before the effective date of Chapter 95.[4] Their contention is contrary to the express language of the statute which covers any negligence claim "that arises from the condition" of the improvement. The tower is an improvement. BLACK'S LAW DICTIONARY 757 (rev. 6th ed.1990). Doty–Moore was renovating and modifying that improvement. The statutory language is unambiguous, and we need only look at the plain meaning of the statute. *Monsanto Company v. Cornerstones Municipal Utility District*, 865 S.W.2d 937, 939 (Tex. 1993); *Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 352 (Tex.1990). The plain meaning of Chapter 95 covers plaintiffs' assertion of a dangerous condition no matter when the condition arose. See *Fisher v. Lee and Chang Partnership*, 16 S.W.3d 198 (Tex.App.—Houston [1st Dist.] 2000, pet'n den'd). The trial court correctly decided that Chapter 95 applies to this case.

Plaintiffs also argue that the application of Chapter 95 leads to an absurd result in this case. To the contrary, it is reasonable for a television station to hire experts such as Doty–Moore to work on its tower because one would expect a tower service company to have the expertise to determine if a tower is safe to work on. Chapter 95 was passed because the Texas Legislature recognized that often property owners want to hire someone with expertise to repair or renovate some improvement on their property. For a review of its legislative history, see Fisher v. Lee and Chang Partnership, supra.

2. *The Two Conditions of Section 95.003*

Having determined that Chapter 95 applies, we must now determine whether the trial court correctly based its summary judgment on Section 95.003. Plaintiffs are claiming that the dangerous condition of the tower made it an unsafe workplace. Section 95.003 provides:

A property owner is not liable for personal injury, death, or property damage to ... an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, *including personal injury, death, or property damage arising from the failure to provide a safe workplace* unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; *and*

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn. (Emphasis added)

Section 95.003.

■ We will discuss only the issue of control at this point because LIN introduced evidence that it did not retain control over the manner of Doty–Moore's work on the tower and is asserting that plaintiffs have introduced no evidence to rebut its evidence. The issue of actual knowledge will be discussed as part of defendants' "no-evidence" motion. It is relevant to both Section 95.003(2) and to plaintiffs' claim of fraudulent misrepresentation, and we will discuss it under the latter claim. Section 95.003 covers the workplace as well as the improvement being worked upon by the contractor. This was recognized by the first reported case to construe the statute. In *Fisher*, the contractor's employee was working on an air conditioner on the building's roof. The employee fell while descending a ladder

---

**4.** See *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523 (Tex.1997), and *Shell Chemical Company v. Lamb*, 493 S.W.2d 742 (Tex. 1973).

because the bolts holding the ladder to the side of the building gave way. He argued that Section 95.003 should not apply because he was not working on the improvement, the air conditioner. The court of appeals rejected this contention in view of the plain language of the statute. Here, the tower was both the improvement to the real estate and the workplace for the Doty–Moore employees.

■ Section 95.003 requires plaintiffs to show that LIN retained or exercised control "over the manner in which the work is performed." In support of their motion for a traditional summary judgment, defendants introduced depositions and other evidence demonstrating that Doty–Moore alone controlled the details of the work on the tower. Pat Moore, the vice president of Doty–Moore, testified that Doty–Moore controlled the manner in which the work was being done and that it was solely responsible for the manner in which the jump track and gin pole was used at the time of the collapse of the tower. Ron Albrecht, the maintenance supervisor for LIN, testified that he simply observed the work being done but that he was not in charge of the manner in which Doty–Moore performed the work. Albrecht also testified that LIN had made a corporate decision to completely rely upon professional, qualified tower companies and tower inspection firms to inspect, maintain, and work on the tower. Defendants point out that there is no evidence that defendants had anything to do with the gin pole on the day of the tower collapse.

Plaintiffs list a number of instances that they contend show that LIN, as tower owner, exercised or retained control over the tower project, discussing in particular the role of Harold Nash as LIN's project coordinator. Often, the Doty–Moore tower crew told Nash when they were going to start certain work and when they might complete that work so that LIN could switch to a standby antenna to keep broadcasting and to coordinate with the other companies utilizing the broadcast tower. Depending upon where the Doty–Moore crew planned to work on the tower, LIN and the other companies had to reduce their radio frequencies to allow the crew to work near the antennae. Reducing power when requested by Doty–Moore does not support an inference that LIN retained control of the workplace. We have reviewed plaintiffs' evidence and find that it only shows LIN's "right to order the work to start or to stop or to inspect progress and receive reports" as allowed by Section 95.003(1).

The trial court correctly granted summary judgment to LIN based upon Section 95.003.

### 3. Prior Owners

■ Normally, prior owners of property owe no duty to keep a property safe after transfer. *Lefmark Management Company v. Old*, 946 S.W.2d 52 (Tex.1997). Plaintiffs must show that the prior owners of the tower owed a duty that is an exception to the general rule. According to plaintiffs, RESTATEMENT (SECOND) OF TORTS § 353 (1965) provides that exception for this case. We first note that the Texas Supreme Court has expressly stated that it has not adopted Section 353 as the law of this State even though it has been cited by and relied upon by several courts of appeals. *Lefmark Management Company v. Old, supra* at 54.

■ Section 353 does not provide an exception in this case. Section 353 requires the plaintiffs to show that the prior owners knew or should have known that a dangerous condition existed on the tower and failed to disclose that dangerous condition. Plaintiffs acknowledged that the prior owners transferred all tower records to LIN and that all maintenance employees were transferred as well. Plaintiffs argued to the court below that the knowledge of two transferred employees, Nash and Albrecht, should be imputed to LIN because they knew or should have known

of the problems with the tower and the improper structural analysis over the years. Both parties introduced evidence concerning the maintenance of the tower and concerning what was disclosed by the prior owners to LIN, but plaintiffs have introduced no evidence to show that the prior owners failed to disclose or concealed an unreasonably dangerous condition.[5]

Section 353 also provides that the prior owners' liability continues only until the new owner has had a reasonable opportunity to discover the condition and take precautions. The collapse of the tower occurred 2 years and 3 months after the transfer of the tower to LIN. Because of the transfer of all the tower records and because of the transfer of the maintenance employees to LIN, we find as a matter of law that LIN had a reasonable opportunity to discover any dangerous conditions. See *Luna v. H & A Investments*, 900 S.W.2d 735 (Tex.App.—Corpus Christi 1994, no writ)(13 months held to be a reasonable opportunity as a matter of law).

The trial court did not err in granting summary judgment to the prior owners on the ground that they owed no duty to the deceased employees.

### Summary Judgment Under Rule 166a(i)

In their motion for a "no-evidence" summary judgment, defendants asserted that plaintiffs failed to produce evidence demonstrating that any negligence of the defendants was the cause of the tower's collapse and that plaintiffs failed to produce evidence that LIN had the actual knowledge of the tower's dangerous condition as required by Section 95.003(2) or as a required element of their fraudulent misrepresentation claim. Because of our holding that the trial court correctly based its summary judgment upon Section 95.003 and

because the prior owners owed no duty to plaintiffs, we need not discuss the issue of causation. *Rogers v. Ricane Enterprises, Inc.*, 772 S.W.2d 76, 79 (Tex.1989).[6]

Plaintiffs asserted a claim of fraudulent misrepresentation against LIN only. A statement is not fraudulent unless the maker knew it was false when he made it or made it recklessly without knowledge of the truth. *DeSantis v. Wackenhut Corporation*, 793 S.W.2d 670, 688 (Tex.1990). Plaintiffs concede that LIN made no statements to Doty–Moore concerning the tower's condition. Their complaint is that LIN's silence amounted to a fraudulent misrepresentation that the tower was safe.

There are times when circumstances impose upon a party a duty to speak; and, if the party remains silent, the silence itself can be a false representation. *Smith v. National Resort Communities, Inc.*, 585 S.W.2d 655, 658 (Tex.1979). Before LIN's silence can be a false representation to Doty–Moore, however, plaintiffs must show that LIN had actual knowledge of the tower's dangerous condition that caused the employees' death. See *Prudential Insurance Company of America v. Jefferson Associates, Ltd.*, 896 S.W.2d 156 (Tex.1995)(purchaser of a building "as is" could not recover because there was no evidence that the seller knew of asbestos fireproofing in the building).

Plaintiffs have introduced no evidence to show that LIN had actual knowledge that the condition of the tower was dangerous. At best, plaintiffs have shown only that LIN was negligent in not having the tower inspected regularly for stress fractures and metal fatigue. That is not equivalent to the actual knowledge required to imply that LIN made a fraudulent misrepresen-

---

5. It may be that defendants intended for the issue of the prior owners' failure to disclose or conceal a dangerous condition to be treated as a "no-evidence" ground under Rule 166a(i). If so, we would reach the same conclusion even if we ignored the defendants' evidence.

6. Likewise, we have not discussed plaintiffs' issues on the trial court's striking of their expert's testimony and denial of their motion for leave to file new evidence because those issues relate to causation.

tation by silence. Plaintiffs did not show that LIN had any duty to warn Doty–Moore. The trial court correctly found that there is no evidence that LIN had actual knowledge either as an element for fraudulent misrepresentation or as required by Section 95.003(2).

### This Court's Ruling

The trial court's summary judgments are affirmed.