COURT
OF APPEALS

                                         SECOND
DISTRICT OF TEXAS

                                                     FORT
WORTH

 

 

                                           NO.
2-07-398-CV

 

 

TERA
D. DURHAM, ANGELA R.                                               APPELLANTS 

GLOVER, CORNELIUS STANLEY                                                             

AND
CRAIG WILSON

                                                      V.

 

PETER
A. ZARCADES,                                                        APPELLEE

INDIVIDUALLY,
AND AS TRUSTEE 

OF
THE PETER A. ZARCADES SEPARATE 

PROPERTY
TRUST AND AS 

TRUSTEE
OF THE TRUST INDENTURE 

OF
PETER A. ZARCADES AND SANDRA

RAE ZARCADES                                                                                   

 

                                                  ------------

 

             FROM
THE 96TH  DISTRICT COURT
OF TARRANT COUNTY

 

                                                  ------------

 

                                                OPINION

 

                                                  ------------








This is a premises liability
case.  Appellants Tera D. Durham, Angela
R. Glover, Cornelius Stanley, and Craig Wilson are attempting to recover
damages from prior owners of an apartment complex in which appellants were
victims of a third-party crime on the theory that the prior owners= acts and omissions created conditions favorable to the third-party
crime.  In six issues, appellants attack
the trial court=s summary
judgment in favor of the prior owners on appellants= claims for negligence, premises liability, negligence per se, and
negligent activity, as well as their right to recover exemplary damages.  We affirm.

Background Facts

On October 22, 2007,
appellants sued appellee Peter ZarcadesC Individually, as Trustee of the Peter Zarcades Separate Property
Trust, and as Trustee of the Trust Indenture of Peter Zarcades and Sandra Rae
Zarcades (collectively, the Trusts)Cbased on an incident in which appellants were held hostage at gunpoint
and sexually assaulted in unit 411[1]
of the Skyline Place Apartments, a property in which appellee, as Trustee of
the Trusts, had formerly owned percentage interests.[2]  













Appellants brought claims
against appellee and the other prior owners for negligence, premises liability,
negligence per se, and negligent activity. 
Appellants alleged as support for their negligence, premises liability,
and negligent activity claims that appellee and the other prior owners failed
to disclose to the current owner and appellants, or actively concealed, or
both, (1) the level of criminal activity regularly occurring at the property,
(2) that the Dallas S.A.F.E. unit[3]
had the property under ongoing review,[4]
and (3) that there were not sufficient locks, security devices, or both on the
units= doors, specifically unit 411. 
They also alleged that appellee and the other prior owners were
responsible for allowing crime on the property to escalate to such a level that
it posed an unreasonable risk to tenants and guests.  In support of their negligence per se claim,
appellants contended that appellee violated Texas Property Code section
92.153(a)(5), which requires all front doors of apartment units to be equipped
with a keyless bolting device.  Tex.
Prop. Code Ann. ' 92.153(a)(5)
(Vernon 2007).  They pled for actual
damages as well as exemplary damages.








Appellee filed a traditional
motion for summary judgment on the following grounds:  (a) he cannot be liable in his individual
capacity because he held no interest in the property in that capacity, only
through the Trusts; (b) as Trustee of the Peter A. Zarcades Separate Property
Trust, he owned only an 11.56% minority interest in the property; as Trustee of
the Trust Indenture of Peter A. Zarcades and Sandra Rae Zarcades, he owned only
a 13.44% interest; each of the Trusts was in the chain of title of the property
for only fifteen days; and both Trusts sold their interests in the property
over six months before the crime occurred; (c) appellants cannot prove
proximate cause because the Trusts= ownership of the property is too remotely connected with appellants= alleged injuries when the evidence shows that a prior manager of the
property remained as manager after the property transfer; (d) no act or
omission of appellee contemporaneously caused appellants= injuries; (e) according to courts of appeals who have considered
section 353 of the Restatement (Second) of Torts, relied on by appellants, it
does not apply when the purchaser of land discovers or should have discovered
the dangerous condition; thus, appellee did not have any duty to disclose any
alleged dangerous condition; (f) appellee did not have any duty to disclose any
alleged dangerous condition because neither he nor the Trusts exercised
possession or control of the property; (g) appellee was not a landlord in any
of the pled capacities; and (h) appellants are not entitled to exemplary
damages because appellee owed no duty to appellants, committed no act or
omission that proximately caused appellants= alleged injuries, section 41.005 of the civil practice and remedies
code prohibits exemplary damages based on a third party=s crime, and no exception applies. 
Tex. Civ. Prac. and Rem. Code Ann. ' 41.005 (Vernon 2008).  

The trial court granted
summary judgment in appellee=s favor.  Appellee then moved to
sever the summary judgment from the remainder of the suit; the trial court
granted the motion, thus making the summary judgment against appellee final and
appealable.  Appellants timely filed a
notice of appeal challenging the judgment in appellee=s favor.

Standard of Review








A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of DeSoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004); see Tex. R. Civ. P. 166a(b), (c).  When reviewing a summary judgment, we take as
true all evidence favorable to the nonmovant, and we indulge every reasonable
inference and resolve any doubts in the nonmovant=s favor.  IHS Cedars
Treatment Ctr., 143 S.W.3d at 798.

Appellants= Negligence, Premises Liability, and Negligent Activity Claims

In his motion for summary
judgment, appellee contended that appellants= negligence, premises liability, and negligent activity claims all
fail because appellants cannot prove that as a prior owner of the property,
appellee owed any duty to appellants. 
Appellants challenge summary judgment on this ground in their first and
fourth issues.

Applicable Law

Tort
liability depends on both the existence and violation of a duty.  Lefmark Mgmt. Co. v. Old, 946 S.W.2d
52, 53 (Tex. 1997); Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197
(Tex. 1995).  Whether a duty exists is a
question of law for the court to decide under the facts surrounding the
occurrence in question.  Trammell Crow
Cent. Tex., Ltd. v. Gutierrez, No. 07-0091, 2008 WL 3991185, at *2 (Tex.
Aug. 29, 2008); Lefmark, 946 S.W.2d at 53.








Generally, a landowner has no
duty to protect another from the criminal acts of third parties who are not
subject to the premises occupier=s control.  Trammell Crow, 2008
WL 3991185, at *2; Lefmark, 946 S.W.2d at 53; Allen v. Rogers,
977 S.W.2d 733, 735 (Tex. App.CFort Worth 1998, pet. denied). 
But this rule is not absolute; a person who occupies or controls
premises has a duty to use ordinary care to protect invitees, including
tenants, from criminal acts of third parties if he or she knows or has reason
to know of an unreasonable and foreseeable risk of harm to the invitee.  Trammell Crow, 2008 W.L. 3991185, at
*2; Lefmark, 946 S.W.2d at 53; Allen, 977 S.W.2d at 735B36.  This duty is commensurate
with the right of control over the property. 
Lefmark, 946 S.W.2d at 53B54.  Thus, a landlord owes such
a duty to a tenant when the landlord has retained the right to control part of
the leased premises.  Exxon Corp. v.
Tidwell, 867 S.W.2d 19, 21 (Tex. 1993); Allen, 977 S.W.2d at
736.  Prior owners of property normally
owe no duty to keep a property safe after transfer because they no longer
exercise such control.  Kelly v. LIN
Television of Tex., L.P., 27 S.W.3d 564, 571 (Tex. App.CEastland 2000, pet. denied); see Lefmark, 946 S.W.2d at 54.  Thus, for a prior property owner to owe a
duty to a tenant, that duty must arise under an exception to the general
rule.  Lefmark, 946 S.W.2d at 54; Kelly,
27 S.W.3d at 571.








Here, appellants contend that
appellee created a dangerous condition on the property, an exception to the
general rule that a prior owner owes no duty to keep property safe.  See Lefmark, 946 S.W.2d at 54; City
of Denton v. Page, 701 S.W.2d 831, 835 (Tex. 1986).  They also contend that an exception applies
under section 353 of the Restatement (Second) of Torts[5]
because appellee concealed or failed to disclose matters involving an
unreasonable risk to persons on the property. 
See Kelly, 27 S.W.3d at 571.








Appellee=s Summary
Judgment Evidence

As summary
judgment evidence, appellee attached his affidavit, to which he attached
special warranty deeds conveying an 11.56% ownership interest in the property
to Peter A. Zarcades, Trustee under the Peter A. Zarcades Separate Property
Trust and a 13.44% ownership interest in the property to Peter A. Zarcades,
Trustee under the Trust Indenture of Peter A. Zarcades and Sandra Rae Zarcades.  Both deeds were filed in the Dallas County
property records on June 17, 2004. 
Appellee also averred that in his capacity as Trustee for the Trusts, he
transferred both property interests on July 2, 2004, fifteen days later.

Appellee further averred that


[a]t
no time did [he] or anyone associated with the Trusts ever participate in any
manner whatsoever in the management, maintenance, supervision, control,
operation, or decision making with respect to the Property in any way.  The interests were purchased by the respective
Trusts as an investment without an intention to occupy, possess, manage or
control the Property in any way.

 








I was
never advised nor saw any documentation of any conditions (dangerous or
otherwise) with respect to the Property. 
I did not inspect the Property.  I
did not know of any crime levels or statistics and was never advised of any
criminal activities on the Property whatsoever. 
I did not know and did not investigate the existence of any security
devices on the Property such as locks, fences, gates or the condition of doors
present on the Property or leading to any apartment unit.  I had no authority, was not involved, and did
not receive any information regarding security of the Property or safety
decisions with respect to the Property.

 

Appellee also presented as
summary judgment evidence the deposition testimony of Phyllis Brown, the
on-site property manager for appellee and the other prior owners, who continued
on with the new management company after title was transferred to the current
owner.  When asked to describe the
security measures in place at unit 411, Brown answered, ADeadbolt lock, adequate lighting in the breezeways, Charley Bar[6]
with a pin screw, keyless entry and alarm.@  She explained that a Akeyless entry@ is a lock
that locks from the inside.  She
confirmed that the unit had a peephole. 
She also testified that before January 26, 2005 (the date of the crime),
an audit check of security measures at the complex was done every other month.  








When asked how things at the
property changed after it was sold in July 2004, she said, AThe make-ready process, the needs for the property. . . .  We were able to get things that we needed for
the property.@  She elaborated further, stating that after
the sale, the access gates were upgraded so that an access card, rather than
just a code, was needed to open them, and that the outside lighting and the
units were upgraded.  Before January 26,
2005, she sent a flyer to the tenants advising them that the apartments had a
new alarm company.  After January 26,
2005, the new owner replaced the door jamb on unit 411.   

Brown also testified that she
routinely received the statistics of criminal activity occurring on the
property from the Dallas Police Department and daily reports from Olde Forge,
the security company for the apartments. 
She did not specifically request the reports from the Dallas Police
Department; the Department offered them to her. 
She also said that from July 2004 until the date of the deposition, the
new owners did not require a criminal activity status and crime summary for the
property.  Before January 26, 2005, Olde
Forge=s reports did not include specific crimes, only Adisturbances . . . [n]oise violations, outside drinking, children out
past curfew.@  








When asked to tell every
action she or her employer or the owners[7]
took to prevent a crime such as the one that occurred involving appellants,
Brown answered, AI notify my
residents of anything that I=ve heard that=s taking
place in the area.  I make additional
locks, the screw-type locks available if that=s what they need.@  When asked what security
measures were in place for trespasser control on or about January 26, 2005,
Brown answered, A[S]ignage
that says, no trespassing.  Olde Forge
would stop anybody that=s walking
through to try to identify.  If he
noticed something suspicious, then he would approach them, and this is an
assessment that I=m making
based on my reports.@  Olde Forge=s security consisted of a roving patrol in a vehicle.  

Brown knew of three or four
apartment burglaries at the complex in the year prior to the crime in which Apossibly an apartment was broken into or something was stolen,@ and six or seven vehicle break-ins. 
When asked whether, based upon her past experience at the property,
Brown thought there was a likelihood that criminal conduct of a similar nature
might occur sometime in the future, she said no.  When asked why, she stated that A[i]t=s a different
place since the property was sold. . . . 
More care has gone into the property. 
A lot of the issues I had when I initially got there, it doesn=t have . . . .@  

Brown explained that A[i]nitially, when [she] went to work there, [she] had young people
hanging out, maybe hanging out in the breezeway, inadequate lighting, walking
through at will, things like that.@  But after July, A[w]e check you out thoroughly. 
There=s a
screening process that . . . not only brings up your credit history but also
your criminal background as well.@  Before July, a similar but not
as thorough procedure was in place to do such checks, but it only gave Abasic information as far as credit history.@  

 

 








Appellants= Summary Judgment Evidence

In response to the summary
judgment motions of all the prior owners, appellants presented deposition
testimony from Emory Nash, a Dallas police officer who at one time worked with
the S.A.F.E. unit; deposition testimony and an affidavit from appellant Glover;
deposition testimony from Anthony Wonderly, an area supervisor with the new
apartment management company; copies of correspondence issued to the prior
owners from the City of Dallas; and excerpts from the Purchase and Sale
Agreement between the prior owners and the new owners.  

Nash testified that when he
worked with S.A.F.E., he was assigned to the Southeast Bureau, which includes
the Skyline Place Apartments.  S.A.F.E.
initiates an investigation into crime statistics for a property after receiving
citizen complaints about the property; if there have been enough Aabatable incidents@ within the past twelve months, the unit Aassemble[s] a team to go out [to the property] and . . . inspect the
units and . . . look for also code and fire violations to make sure the
property is up to city code.@  








Attached to Nash=s deposition excerpt is a copy of a June 15, 2005 letter from the
S.A.F.E. unit addressed to Skyline Place Apartments, at the address for the
former management company, BNC Real Estate Accounting, 13151 Emily Road Suite
250, Dallas, Texas 75240-8941.  The
letter states that A[p]ublic
records indicate that [the addressee] is the (property owner, landlord, or
person in control) of the property@ and indicates that it is for the purpose of informing BNC of the
criminal activity occurring on the property. 
The letter goes on to state that the S.A.F.E. unit had received a
complaint alleging that the property is a criminal nuisance site and that since
a May 25, 2004 meeting,[8]
there had been one reported kidnapping, one drug arrest as a result of a
traffic stop, one Astrong arm@ robbery, three aggravated robberies, five aggravated assaults, and
two aggravated sexual assaults at the property. 
The letter also warned of the penalties for failing to abate such a
criminal nuisance. 








Also attached to the
deposition excerpt was a Location Review by the S.A.F.E. unit, listing all of
the criminal activity on the property from June 10, 2003 to June 9, 2005 and
detailing the S.A.F.E. unit=s involvement with the property from May 10, 2004 until June 15, 2005,
the date of the report.  The report shows
that on June 24, 2004 and July 28, 2004, Officer Nash inspected the property
and found no abatable criminal activity; however, between July 28, 2004 and
June 15, 2005, after the property had been sold and the new management had
taken over, there were at least five aggravated assaults, one family violence
assault, one sexual assault, two aggravated sexual assaults (the crime at issue
here), one kidnapping, two drug arrests, four aggravated robberies (two of
which involved the crime at issue here), one report of indecency with a child,
and a report of random gunfire in the area. 


In her affidavit, Glover averred
that her lease, attached to the affidavit, states that the apartments were
required by law[9]
to have a peephole on each exterior door and a keyless bolting device on each
door and that there was no keyless deadbolt lock on her front door the entire
time she was a tenant, including when the crime occurred.  She stated that the intruder who sexually
assaulted her kicked in the front door. 
Also attached to her affidavit are photocopies of photographs of the
apartment door, which are of poor quality in the clerk=s record.  In her deposition
excerpt, Glover testified that there was only one lock on her unit=s door, and it was a Akeyhole lock,@ not a Abig bolt lock.@  She said she complained to someone named
Aeysha[10]
Amonths before the accident@ about the lack of a keyless deadbolt, but not in writing.    








In Wonderly=s deposition excerpt, he testifies that on November 5, 2004, the
current owners and manager felt that they had complied with the lease terms and
that unit 411 did have a keyless bolting device on the exterior door.  He said that it Awould seem to be the only unit in the entire [318 unit] complex that
did not.@  Before the current owners
purchased the property, he personally walked through all the vacant units,
about one hundred, and randomly selected about one hundred occupied units to
walk through as well.  According to
Wonderly, he did not discover any units missing the proper locks.  

Wonderly further testified
that he had Aconfirmed@ only recently (as of the date of the deposition) that unit 411 did
not have a keyless deadbolt or peephole on January 26, 2005, the date of the
crime.  He checked all 317 other units
after that and there were no other locks missing.  Wonderly explained that Brown, the property
manager, told him the day of the crime that the door might possibly have been
missing the required lock and peephole; however, before he could confirm the
truth of this statement, the maintenance crew had already repaired the door with
the correct locks.  Neither Wonderly nor
Brown ever saw the door without the required locks.  He did not get to see the interior of the
door until Amonths later
after the residents no longer occupied the unit.@[11]  








Wonderly additionally
testified that he was not aware that the apartments were being reviewed by the
S.A.F.E. unit until April or May 2005 because the City Ahad been sending all their documents to the previous owners who never
gave us any information . . . or told us that we were even involved in that.@  However, he had never
requested a security survey or assessment of the property; he had only visually
surveyed the property.  Wonderly stated
that Brown told him she had been told by Aher previous owners not to talk negative about the property.@  When he talked to her before
she went to work for the new management company, she told him, Aevery property has some problems; we have ours.@  Once she was hired by the new
company, Brown asked them for help with Acar beak-ins and all and additional,@ which is why they Aadditionally got Olde Forge Security right away.@  However, Brown never informed
Wonderly about the level of crime occurring at the property in 2003 and
2004.  








The three letters attached as
summary judgment evidence are dated May 25, 2004 and April 26 and 28,
2005 and are addressed to entities other than appellee.[12]  The April 26 letter details the S.A.F.E. unit=s activity regarding the property since May 19, 2004 and notes that no
one contacted the S.A.F.E. unit as was requested on May 25, 2004.  The letter also notes that criminal activity
at the property had continued since May 25, 2004 and warns that the City could
take legal action against the owners for failing to abate the criminal activity
on the property.  The second, April 28,
2005 letter appears to be identical to the April 26, 2005 letter.  The May 25, 2004 letter is similar to the
June 15, 2005 letter attached to appellee=s summary judgment motion.

Also attached is a copy of
excerpts from the Purchase and Sale Agreement for the property, which contain
the various representations and warranties from the prior owners to the
purchaser,[13]
including a representation and warranty that 








[e]xcept
as disclosed on the Rent Roll, with respect to each Tenant:  (i) . . . no uncured breach or default of a
material nature exists on the part of the Landlord or Tenant thereunder [with
respect to any lease and]; (ii) the Landlord has no obligation to construct,
install, or repair any improvements or facilities for such Tenant.  

 

In addition, the agreement contains a
representation and warranty that A[t]here are no actions, suits, claims, assessments, condemnation
proceedings, violations of any laws, rules, or regulations of any governmental
authority or property association, or proceedings pending or threatened, that
could materially adversely affect the ownership, operation or maintenance of
the Property or Seller=s ability to
perform@ under the agreement.  

Analysis

Appellee specifically averred
that he had no knowledge of the crime activity occurring at the property and
that he did not receive any information regarding such activity.  Appellants= evidence does not contradict appellee=s affidavit testimony, especially considering that none of the
S.A.F.E. unit letters in evidence were addressed to appellee in any capacity
and that appellee, as Trustee of the Trusts, owned interests in the property
for a mere fifteen days.  Additionally,
there is no evidence that any of the prior owners to whom the letters were
addressed shared this information with appellee.








There is likewise no evidence
that any criminal activity occurred during or immediately before or after the
short time the Trusts, through appellee, owned their minority interests in the
property.  While it might be argued that
appellee could have obtained information regarding the crime activity on the
property and performed a more thorough due diligence review of the property,
appellants have cited no authority requiring a prospective property owner to do
so.  See Timberwalk Apartments
Partners, Inc. v. Cain, 972 S.W.2d 749, 759 (Tex. 1998) (AProperty owners bear no duty to regularly inspect criminal records to
determine the risk of crime in the area.@).  And, considering that
appellee=s address is in San Diego, California and that he averred that he had
never inspected the property or intended to occupy or possess it, appellants
did not present any evidence that appellee should have known of the amount and
type of crime occurring at the apartments. 
The evidence does not show how appellee could have created or
contributed to a dangerous condition over a two-week period when, as Trustee of
the Trusts, the level of crime activity existed, without his knowledge, at the
time he bought his interests in the property and continued at roughly the same
rate after he sold his interests two weeks later.  Accordingly, we conclude and hold that
appellee, individually and as Trustee of the Trusts, conclusively proved that
he had no duty to appellants to protect them from third-party criminal acts
occurring at the property, especially as of January 26, 2005.  See Lefmark, 946 S.W.2d at 55.  Thus, the trial court did not err by granting
appellee summary judgment on appellants= negligence, premises liability, and negligent activity claims.








We overrule appellants= first and fourth issues.

Appellants= Negligence Per Se Claim

In their fifth issue,
appellants claim that the trial court erred by granting summary judgment for
appellee on all of their negligence and premises liability claims, including
their negligence per se claim, because appellee failed to conclusively prove
the absence of proximate cause. 
Appellants= negligence
per se claim is based on their contention that appellee and the other prior
owners violated Texas Property Code 92.153(a)(5) by failing to install a
keyless deadbolt on unit 411 at the owners= expense.  Tex. Prop. Code Ann. ' 92.153(a)(5).

Applicable Law








Negligence per se is a
concept adopted by the civil courts in which a duty is based on a standard of
conduct created by a statute rather than on the reasonably prudent person test
used in pure negligence claims.  Smith
v. Merritt, 940 S.W.2d 602, 607 (Tex. 1997); Omega Contracting, Inc. v.
Torres, 191 S.W.3d 828, 839 (Tex. App.CFort Worth 2006, no pet.) (op. on reh=g.).  In such a case, the
factfinder is not asked to decide whether the defendant acted as a reasonably
prudent person would have acted under the same or similar circumstances; instead,
the statute itself states what a reasonably prudent person would have
done.  Omega Contracting, 191
S.W.3d at 839; Supreme Beef Packers, Inc. v. Maddox, 67 S.W.3d 453, 455
(Tex. App.CTexarkana
2002, pet. denied).  If an excuse is not
raised, the only inquiry for the factfinder is whether the defendant violated
the statute and, if so, whether the violation was a proximate cause of the
injury.  Omega Contracting, 191
S.W.3d at 839; Supreme Beef Packers, 67 S.W.3d at 455.








Proximate cause has two
components:  cause-in-fact and
foreseeability.  LMB, Ltd. v. Moreno, 201
S.W.3d 686, 688 (Tex. 2006); Travis v. City of Mesquite, 830 S.W.2d 94,
98 (Tex. 1992); Wrenn v. G.A.T.X. Logistics, Inc., 73 S.W.3d 489, 496
(Tex. App.CFort Worth
2002, no pet.).  These elements cannot be
established by mere conjecture, guess, or speculation.  W. Invs., Inc. v. Urena, 162 S.W.3d
547, 551 (Tex. 2005); Doe v. Boys Clubs of Greater Dallas, Inc., 907
S.W.2d 472, 477 (Tex. 1995).   The test
for cause-in-fact is whether the act or omission was a substantial factor in
causing the injury without which the harm would not have occurred.  Urena, 162 S.W.3d at 551; Marathon
Corp. v. Pitzner, 106 S.W.3d 724, 727 (Tex. 2003); Brumfield v. Ruyle,
No. 02-06-00037-CV, 2007 WL 1018475, at *6 (Tex. App.CFort Worth Apr. 5, 2007, no pet.). 
If the defendant=s negligence
merely furnished a condition that made the injuries possible, there can be no
cause-in-fact.  Urena, 162 S.W.3d
at 551; IHS Cedars Treatment Ctr., 143 S.W.3d at 799.  In other words, the conduct of the defendant
may be too attenuated from the resulting injuries to the plaintiff to be a
substantial factor in bringing about the harm. 
IHS Cedars Treatment Ctr., 143 S.W.3d at 799; Arguelles v.
Kellogg  Brown & Root, 222 S.W.3d
714, 731 (Tex. App.CHouston
[14th Dist.] 2007, no pet.).

In determining whether
criminal conduct is foreseeable, we must consider whether any criminal conduct
previously occurred on or near the property, how recently the criminal conduct
occurred, how often it occurred, how similar it was to the conduct at issue,
and what publicity was given to the previous conduct to indicate that the
premises owner knew or should have known about it.  Timberwalk, 972 S.W.2d at 757.  AThese factorsCproximity,
recency, frequency, similarity, and publicityCmust be considered together in determining whether criminal conduct
was foreseeable. . . .  The court must
weigh the evidence using all the factors.@  Id. at 759;  Trammell Crow, 2008 WL 3991185, at *4.

Analysis













Appellee
contends that his failure to ensure that the door had a keyless bolting device
and peephole during the fifteen days he owned interests in the property as
Trustee of the Trusts is too remotely attenuated from appellants= injuries six months later.  The
record shows that there were several assaults, sexual assaults, and robberies
at the apartments around the time appellee acquired his interests in the
property as Trustee of the Trusts.  There
is no evidence as to whether any of these crimes were similar to the one here,
i.e., that anyone kicked in a door to get into one of the units or that any of
the assaults, sexual assaults, or robberies were facilitated by the lack of a
locking device on any of the doors.  See
Trammell Crow, 2008 WL 3991185, at *6B7. Moreover, it is undisputed that appellee did not have personal
knowledge about the frequency and type of crime occurring at the property or
the types of security devices that were or were not on Glover=s door.  Appellants do not
dispute the evidence that Glover=s door was apparently the only one in the complex lacking a keyless
deadbolt.  And, as we have already
discussed previously, there is no evidence that appellee ever received notice
of the letters written by the S.A.F.E. unit regarding the criminal activity on
the property.[14]  See Timberwalk, 972 S.W.2d at 759 (APrevious similar incidents cannot make future crime foreseeable if
nobody knows or should have known that those incidents occurred.@).  Accordingly, we conclude and
hold that appellee conclusively proved that his alleged negligence (whether
based on appellants= pled
negligence, negligence per se, or premises liability claims) could not have
been a proximate cause of appellants= injuries and therefore that he was entitled to summary judgment on
appellants= negligence
per se cause of action as well.  We
overrule appellants= fifth
issue.[15]

Exemplary Damages

Appellants contend in their
sixth issue that the trial court erred by granting summary judgment as to their
claim for exemplary damages.  However,
because we have determined that the trial court did not err by granting summary
judgment as to all of appellants= independent tort claims, we also hold that it likewise did not err by
granting summary judgment as to damages flowing from those claims.  See Fed. Express Corp. v. Dutschmann,
846 S.W.2d 282, 284 (Tex. 1993) (holding that recovery of exemplary damages
requires finding of independent tort and accompanying damages); Everett v.
TK-Taito, L.L.C., 178 S.W.3d 844, 860 (Tex. App.CFort Worth 2005, no pet.).  We
overrule appellants= sixth
issue.

                                                 Sanctions








Appellee has asked this court
to impose sanctions on appellants, contending that this appeal is
frivolous.  See Tex. R. App. P. 45.  Under rule 45, this court may award just
damages to a prevailing party if it determines that an appeal is
frivolous.  Id.; Clopton v. Pak,
66 S.W.3d 513, 517 (Tex. App.CFort Worth 2001, pet. denied). 
Whether to award damages is within this court=s discretion.  Clopton,
66 S.W.3d at 517.  Sanctions should be
imposed only in egregious circumstances. 
Id.; Angelou v. African Overseas Union, 33 S.W.3d 269, 282
(Tex. App.CHouston
[14th Dist.] 2000, no pet.).  We do not
believe that this case warrants sanctions; therefore, we decline to impose
monetary sanctions under rule 45.

Conclusion

Having overruled in part and dismissed in part appellants= dispositive issues, we affirm the trial court=s judgment.

 

 

TERRIE LIVINGSTON

JUSTICE

 

PANEL: 
LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DELIVERED: October 30, 2008











[1]Glover
leased unit 411; the other appellants were visiting her when the crime
occurred.  





[2]Appellants
also sued several other prior owners and the former management company of the
property; however, appellants conceded at oral argument that these defendants
are not parties to this appeal because appellants=
notice of appeal purports to appeal only the summary judgment in favor of
appellee, individually and as Trustee of the Trusts, and was never amended to
include the summary judgments in favor of the other defendants.  Appellants have never moved this court to
amend the notice of appeal.  Accordingly,
we dismiss appellants=
second issue, which challenges the trial court=s
summary judgment as it relates to the former management company, and we dismiss
the remainder of appellants= issues to the extent they
challenge the summary judgments in favor of any of the prior owners other than
appellee.  See Tex. R. App. P.
25.1(b), 43.2(f).





[3]This
unit of the Dallas Police Department works to reduce crime by meeting with
owners and giving them notice about crime occurring on their properties. 





[4]Appellants
also alleged that appellee and the other prior owners failed to forward to the
property=s
management company documents from the S.A.F.E. unit that appellee and the prior
owners received after they had already transferred ownership of the property.





[5]Section
353 provides as follows:

 

(1) A
vendor of land who conceals or fails to disclose to his vendee any condition,
whether natural or artificial, which involves unreasonable risk to persons on
the land, is subject to liability to the vendee and others upon the land with
the consent of the vendee or his subvendee for physical harm caused by the
condition after the vendee has taken possession, if

 

(a)
the vendee does not know or have reason to know of the condition or the risk
involved, and

 

(b)
the vendor knows or has reason to know of the condition, and realizes or should
realize the risk involved, and has reason to believe that the vendee will not
discover the condition or realize the risk.

 

(2)
If the vendor actively conceals the condition, the liability stated in
Subsection (1) continues until the vendee discovers it and has reasonable
opportunity to take effective precautions against it.  Otherwise the liability continues only until
the vendee has had reasonable opportunity to discover the condition and to take
such precautions.

 

Restatement (Second) of Torts
' 353
(1965).

 

The Texas Supreme Court has expressly stated that it has not adopted
Section 353 as the law of Texas even though several courts of appeals have
cited and relied upon it.  Kelly,
27 S.W.3d at 571; see Lefmark, 946 S.W.2d at 54.  Thus, although we will analyze whether
appellants=
reliance on section 353 would defeat summary judgment in this case, we express
no opinion as to whether it has been adopted as the law of Texas.





[6]A
Charley Bar is a metal bar that goes across a sliding glass door.  





[7]The
question does not specify whether it refers to the prior owners and management
company or the current owner and management company.





[8]This
meeting was between Officer Nash and the property=s
maintenance man, who was authorized by the management company to attend.  





[9]The
actual language of the lease states that such devices are required by Texas
law, Awith
some exceptions.@  





[10]Aeysha
is not identified in the record.





[11]Wonderly=s
testimony is somewhat ambiguous as to whether, after he was able to see inside
the unit, he confirmed that it did not have the required lock or whether it
already had the required lock when he was able to view the inside door.  However, because we must construe the summary
judgment evidence in appellants= favor, we will construe
Wonderly=s
testimony to mean that after he was able to see the inside of the door, he was
able to confirm that it did not have the required lock.  See IHS Cedars Treatment Ctr., 143
S.W.3d  at 798.





[12]The
April 2005 letters are addressed to Skyline Apartments/BNC Real Estate, BNC
Skyline, L.P., and BNC Inwood, LLC, at the same address on Emily Road to which
the June 15, 2005 letter was sent.  They
are also addressed to BNC Inwood, LLC, Attention: Barry S. Nussbaum, at an address
in California.  The May 25, 2004 letter
is addressed to Skyline Place Apartments at the Emily Road address. 





[13]The
purchaser is listed as Chandler Wonderly and indicates that Wonderly intended
to assign his rights as purchaser to a third party. 





[14]Likewise,
there is no evidence as to the identity of Aeysha, the person to whom Glover
said she complained about the lack of a deadbolt, and no evidence that Aeysha
ever conveyed or had a duty to convey this information to appellee.





[15]Because
appellants=
negligence per se claim fails as to the proximate cause element, we need not
address appellants=
third issue contending that appellants are within the class of persons whom
section 92.153(a)(5) was designed to protect. 
See Tex. R. App. P. 47.1; Holt v. Reproductive Servs., Inc.,
946 S.W.2d 602, 607 (Tex. App.CCorpus Christi 1997, writ
denied).