United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 11, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-30656

_____

DIRKSHAWN BRYAN; MAXINE BRYAN
Plaintiffs-Appellants
and
ACE AMERICAN INSURANCE CO.
Intervenor Plaintiff-Appellant

versus

SHELL OFFSHORE INC.; ET AL
Defendants

SHELL OFFSHORE INC.

Defendant-Appellee

_____

Appeal from the United States District Court for
the Western District of Louisiana
(03-CV-1239)

_____

Before KING, STEWART, AND DENNIS, Circuit Judges.

PER CURIAM:[1]

Plaintiffs sued seeking compensation for injuries incurred by
Mr. Bryan when, while performing sandblasting and painting
services for a contractor hired by Shell to renovate an offshore
oil platform, he stepped on a wooden deck board which gave way,
causing him to fall. They now appeal the district court's decision
to grant summary judgment against all claims in their premises

_____

[1] Pursuant to 5th Cir. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5th Cir. R. 47.5.4.

liability suit.

They challenge the district court's determination that Chapter 95 of the Texas Civil Practice and Remedies Code applies and further challenge the district court's findings that Shell lacked control and actual knowledge and that therefore has not incurred liability under TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. We agree with the district court's assessment of the record and the law and therefore affirm.

BACKGROUND

Shell Offshore, Inc. ("Shell") owns and operates a fixed production platform in the Gulf of Mexico, off the coast of Texas on the Outer Continental Shelf ("OCS"), the Shell High Island 350-A ("HI 350-A" or "the platform"). Shell does not have any of its own employees working onboard the platform; rather, Greystar Corporation ("Greystar") was contracted as the platform operator.

As a part of readying the platform for sale, Shell contracted with a company called Chet Morrison; the contract included "[r]epair [of] any holes left or made in the wood deck resulting from modifications required to install [a] temporary crane, etc." 1 R. 603. While performing that job, Chet Morrison apparently noted that other boards needed replacing beyond those immediately referenced in the project; it replaced those additional boards with Shell's permission. Shell had also contracted with Salamis Services ("Salamis") for sandblasting and painting services to be performed on the platform, again in preparation for sale. Mr.

Bryan was employed by Salamis on that contract, and was performing the above tasks when he stepped on a wooden deck board that gave way; the fall injured his back, neck, and other parts of his body. He received benefits under the Longshore Harbor Workers' Compensation Act ("LHWCA") from Ace American Insurance Co. ("Ace"), Salamis's provider.

Mr. Bryan and his wife ("the Bryans") filed suit in federal district court in April 2003 against both Shell and Greystar alleging both negligence and premises liability claims.[2] Ace then filed as intervenor on subrogation grounds. Based on the platform's location on the OCS off the Texas coast, the court applied Texas law[3] and dismissed the negligence claims, but retained the premises liability claims.

The parties conducted discovery and twice participated in unsuccessful mediation. Shell then filed a motion for summary judgment, arguing that Chapter 95 of the Texas Civil Practice and Remedies Code applied to shield it from liability. The district court granted the motion on May 13, 2005, dismissing all of the plaintiffs' and the intervenor's claims with full prejudice. The Bryans and Ace timely appealed to this court.

STANDARD OF REVIEW

---

[2] The claims against Greystar have since been settled. Mrs. Bryan's claims for damages are based on loss of consortium.

[3] The Outer Continental Shelf Lands Act, 43 U.S.C. § 1349, applies to this suit, and "adopts the law of the adjacent state." Fruge v. Parker Drilling Co., 337 F.3d 558, 560 (5th Cir.2003).

This court reviews the district court's summary judgment ruling de novo. Hanks v. Transcontinental Gas Pipe Line Corp., 953 F.2d 996, 997 (5th Cir. 1992). The court applies the same standard on appeal as is applied by the district court. Terrebonne Parish Sch. Bd. v. Mobil Oil Corp., 310 F.3d 870, 877 (5th Cir.2002) (citing Auguster v. Vermilion Parish School Board, 249 F.3d 400, 401 (5th Cir.2001). Summary judgment is appropriate where the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Facts and inferences reasonably drawn from those facts should be taken in the light most favorable to the non-moving party. Eastman Kodak Co. v. Image Technical Services, Inc., 504 U.S. 451, 456 (1992); Huckabay v. Moore, 142 F.3d 233, 238 (5th Cir.1998). Where the non-moving party fails to establish "the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," no genuine issue of material fact exists. Celotex, 477 U.S. at 322-3.

TEX. CIV. PRAC. & REM. CODE ANN. Chapter 95

Chapter 95 of the Texas Civil Practice and Remedies Code was enacted in 1996 "to provide greater protection for property owners against both types of premises liability claims." Arsement v. Spinnaker Exploration Co., LLC, 400 F.3d 238, 245 (5th Cir. 2005); see also Arsement, 400 F.3d at 249; Dyall v. Simpson Pasadena

Paper Co., 152 S.W.3d 688, 699 (Tex. App. - Houston [14th Dist.] 2004).

Per § 95.002, the chapter's provisions apply to a claim

(1) against a property owner...for personal injury, death, or property damage to...a subcontractor or an employee of a... subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Even where both of the above requirements are met, however, liability will not accrue unless

(1) the property owner exercises or retains some control over the manner in which the work is performed [other than the right to start or stop work or to inspect]; and

(2) the property owner had actual knowledge of the danger or condition...and failed to adequately warn.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. Both parts of § 95.003 must be satisfied for liability to be imposed on an owner. Kelly v. LIN Television of Texas, L.P., 27 S.W.3d 564, 567 (Tex. App. - Eastland 2000).


ANALYSIS

Plaintiffs allege that the district court erred (1) in determining that Chapter 95 applied and (2) in determining that they had not established that Shell met the requirements for liability under the chapter. We address each issue in turn.


Applicability Of Chapter 95

On appeal, plaintiffs' arguments focus on (1) whether the

claim arises from the condition or use of an improvement and (2) whether Salamis was engaged in construction, repair, renovation, or maintenance.

Appellants argue that the defective wooden deck boards are the source of the injury, and do not constitute an improvement under the statute because "his position on the platform, his work and his services had no relation to the defect." Appellants' Brief at 7. The district court, rather, found that the platform was the improvement.

Although the Texas Supreme Court has not yet taken up the issue, the state courts have thus far concluded that Chapter 95 applies in such a situation. In Fisher v. Lee and Chang Partnership, the plaintiff fell from a ladder, which "provided appellant a means to reach his work site. It was not the object of his work. Nevertheless, appellant's injuries arose from 'the failure to provide a safe workplace.'" 16 S.W.3d 198, 202 (Tex. App. - Houston [1st Dist.] 2000) (looking to the plain language of the statute and the legislative history); see also, Francis v. Coastal Oil & Gas Corp., 130 S.W.3d 76, 83 (Tex. App. - Houston [1st Dist.] 2002) ("the injuries must relate to work being done by the injured party, but the injury-producing defect need not be the object of the injured party's work."). Moreover, the district court's interpretation comports with the approach in Arsement, where the installation of a sump deck was held to be an improvement to a platform. Id., 400 F.3d at 242 (describing the sump deck); Id. at 245 (noting it was undisputed that the sump

deck constituted an improvement). Although the record is not specific, presumably Mr. Bryan was standing on the deck boards either because he was on his way to his work site or standing on them to carry out his work. This court is bound to make its best determination of what the Texas Supreme Court would do, looking to the intermediate courts where that body is silent. Howe v. Scottsdale Ins. Co., 204 F.3d 624, 627 (5th Cir. 2000). Given the gloss used by numerous intermediate Texas courts and the adoption of that approach by cases in this circuit, the relationship between the boards and Mr. Bryan's work is sufficient such that the district court did not err in determining that no genuine issue of material fact existed on this point.

Appellants further argue that the sandblasting and painting in which Mr. Bryan was engaged in fact constitute maintenance, rather than the "construction, repair, renovation, or modification" required by § 95.002(2). The district court refused to make the distinction, holding instead that the activity qualified as renovation or repair.

A sampling of Texas court cases offers a wide range of activities that are treated as repair or renovation, including repairing a roof-mounted air conditioner; replacement of a television station antenna; a "washout" of coiled tubing to increase the flow of gas in a well; filtering mud for drilling to improve well performance; repairing a leaking flange at a chemical plant; and working as a "holewatch" and "firewatch" on a large cleanup contract at a chemical plant. See, respectively, Fisher,

16 S.W.3d at 201; Kelly, 27 S.W.3d at 570; Francis, 130 S.W.3d at 82; Dyall, 152 S.W.3d 688 (which does not discuss the issue but proceeds to analyze § 95.003); and Phillips v. The Dow Chemical Co., 186 S.W.3d 121, 131 (Tex. App. - Houston [1 Dist.] 2005). In an unreported case, Judge Buchmeyer of the Northern District of Texas held that changing an air filter as a part of a janitorial services contract did not require sufficient expertise such that Chapter 95 would apply. Moore v. Howmet Corp., 2005 WL 856852 (N.D. Tex. 2005) at *2.

Qualitatively, sandblasting and painting on an offshore platform in preparation for sale is closer in nature to the fact patterns in the various Texas cases cited above. Given the record before it, and the wide range of activities encompassed by Texas cases, the district court did not err in determining that there was no genuine issue of material fact that Mr. Bryan's work constituted "repair or renovation" such that Chapter 95 applied.

Proving Liability Under Chapter 95

Appellants' second set of arguments assert that Shell should not receive protection under Chapter 95 because it possessed both (1) sufficient control over the manner in which the work was performed and (2) actual knowledge of the danger or condition.

Appellants' entire argument regarding control is phrased around whether Shell had actual control over Chet Morrison's replacement of the deck boards. To meet their burden under § 95.003, however, appellants needed to raise a genuine question of

material fact as to whether Shell had actual control over Salamis's (and by extension, Mr. Bryan's) contracted performance, and they have not done so. See Arsement, 400 F.3d at 249 ("[t]he requisite control factor is narrowly construed: the owner must control the 'mode or method' of the contractor's work."); Dyall, 152 S.W.3d at 700-7 ("While it is certainly true that, as the property owner, Simpson had 'control' of its facilities, this is not the type of 'control' of which the statute speaks. Simpson undoubtedly had the power to sell or lease its property, control access to its property, to shut down the facilities, etc. However, the statute speaks of 'control over the manner in which the work is performed.'"). The district court was thus correct in finding that appellants had not shown that Shell retained the requisite control.

Appellants assert that their evidence that Chet Morrison was hired to replace the deteriorated board and informed Shell of the deteriorated board creates a genuine question of material fact as to Shell's actual knowledge of the condition. The statutory language, however, and the Texas courts' interpretation are uniformly clear that actual knowledge is required. See, particularly, Dyall, 152 S.W.3d at n.18 (citing Bishop v. Nabisco, Inc., 2004 WL 832916 at *3 (Tex. App. - Houston [14th Dist.] 2004) for the proposition that "knowledge that an activity is potentially dangerous is not sufficient to satisfy the second prong of Section 95.003 - actual knowledge of the danger is required."). The record does not reveal that Shell failed to

address and repair any dangerous condition as to which it had been informed. A Greystar operator had noticed no deterioration when surveying the area the morning of the accident. The platform had been inspected by both Deepwater Specialties and the MMS, neither of whom identified a problem. While Shell did have notice that deck boards near the old site of the temporary crane needed replacing, all boards so identified had been replaced before the day of Mr. Bryan's accident. Appellants introduced no further evidence indicating that Shell had actual knowledge of a continuing problem. The district court thus properly found no genuine question of material fact as to whether Shell possessed the requisite actual knowledge.

CONCLUSIONS

Based on the record and arguments before us, we agree with the assessment of the district court that no genuine issue of material fact existed with regard to any of the above issues. The judgment of the district court is therefore AFFIRMED.