David **HERNANDEZ**, Appellant,

v.

**BRINKER INTERNATIONAL, INC.**, Appellee.

No. 14–07–00341–CV.

Court of Appeals of Texas, Houston (14th Dist.).

March 31, 2009.

Collyn A. Peddie, Houston, for appellant.

Douglas T. Gosda, Charles Creighton Carr, II, Houston, for appellee.

Panel consists of Justices YATES, ANDERSON, and BROWN.

### PLURALITY OPINION

JEFFREY V. BROWN, Justice.

David Hernandez appeals from the trial court's grant of Brinker International, Inc.'s summary-judgment motion based on Chapter 95 of the Texas Civil Practice and Remedies Code. We reverse and remand.

### *Facts and Procedural History*

At the time of the events giving rise to this lawsuit, Brinker International, Inc., owned and operated a Chili's restaurant at 1040 W. Sam Houston Parkway in Houston. In early 2005, Brinker retained an air-conditioning contractor for routine maintenance and as-needed repairs to the restaurant's air-conditioning system. On March 10, the contractor assigned its employee David Hernandez to replace a com-

pressor motor in an air-conditioner located on the roof of the restaurant. Hernandez removed the original compressor and planned to carry it toward a point on the roof from which he could lower it to the ground. As he stepped away from the air-conditioner with the compressor in his arms, the roof collapsed and the right side of his body fell through the opening.[1]

In October that same year, Hernandez filed the underlying lawsuit against Brinker alleging that it failed to exercise ordinary care in maintaining the restaurant premises, specifically the roof. He claimed that as a result of his fall on March 10, he suffered injuries to his left leg, lower back, and right shoulder, foot, knee, and hip. Hernandez sought damages for physical impairment, medical expenses, past and future lost wages, mental anguish, and physical pain.

Discovery revealed that a few weeks before March 10, Brinker had scheduled replacement of the restaurant's roof because it was leaking and had at least one "soft spot." But the restaurant's manager, an employee of Brinker, did not tell Her-nandez before he started work that there were any problems with the roof. In his answers to interrogatories, Hernandez claims that when Hernandez reported his fall to the restaurant manager, the manager then told Hernandez there had been existing problems with the roof and that it was scheduled to be replaced.

In the trial court, Brinker filed a motion for summary judgment contending that Chapter 95 of the Texas Civil Practice and Remedies Code precluded Hernandez's recovery against Brinker. *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 95.001–.004 (Vernon 2005). Specifically, Brinker argued it could have no liability to Hernandez, the employee of a contractor, because Hernandez himself testified that Brinker exercised no control over his work on the air-conditioning unit. *See id.* § 95.003 (precluding property owner's liability for injury to employee of a contractor unless owner exercises control over performance of the work and had actual knowledge, but failed adequately to warn, of the danger that resulted in injury).[2]

---

1. Hernandez gave conflicting descriptions of the event in his trial-court pleadings and his brief to this court. It is not material for purposes of our review whether at the time he fell Hernandez was moving away from the air-conditioning unit and carrying the original compressor, as alleged in his brief to this court, or toward the unit and carrying the replacement compressor, as alleged in his trial-court pleadings.

2. Without admitting it had actual knowledge that the roof was dangerous, Brinker also argued it was entitled to summary judgment because Hernandez admitted Brinker warned him before March 10 that the roof was dangerous. To support its argument, Brinker attached Hernandez's response to an interrogatory requesting the factual basis for any contention by Hernandez that Brinker had actual knowledge of the alleged dangerous condition of the roof. Hernandez responded: "The facility and restaurant managers knew of the potential danger since the restaurant manager told me of the dangers several weeks prior to the work performed. The restaurant manager also informed [Hernandez]'s safety manager of such dangers when [Hernandez] arrived at the job site." Brinker argued this response is proof that it warned Hernandez before he undertook the work in question, so as to satisfy the warning as well as the control prongs of section 95.003. However, Hernandez amended his "inartful" interrogatory response to read, "The facility and restaurant managers knew of the potential danger since the restaurant manager told me after I was injured that he was aware of the dangers several weeks prior to the work performed. The restaurant manager also informed my safety manager after I was injured that he was aware of such dangers when I arrived at the job site." Indeed, in his deposition, the restaurant manager confirmed that he had not told Hernandez or anyone else with the air-conditioning contractor of any danger with the roof, either before or on March 10.

The trial court granted Brinker's summary-judgment motion on March 21, 2007. Hernandez timely filed this appeal.

*Standard of Review*

 We review issues of statutory construction de novo. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 222 (Tex.2002). We are not required to resort to extrinsic aids to define the meaning of a clear and unambiguous statute. *St. Luke's Episcopal Hosp. v. Agbor*, 952 S.W.2d 503, 505 (Tex.1997). When the meaning of statutory language is unambiguous, we adopt the interpretation of the statute supported by the plain meaning of the provision's words. *Id.*

*Analysis*

Section 95.003 of the Texas Civil Practice and Remedies Code provides:

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace unless:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

Tex. Civ. Prac. & Rem. Code Ann. § 95.003. Hernandez contends the trial court committed an error of law in granting summary judgment for Brinker because, even if the record contained conclu-sive proof that Brinker did not control the work or did not have actual knowledge of the danger (or knew but adequately warned), Chapter 95 does not apply to Hernandez's claims.

 According to Hernandez, Chapter 95 would apply only if his claim arose from the condition or use of the improvement he was repairing, the air-conditioning system. Because his claim arises from the condition of a different improvement, the roof, Hernandez argues Chapter 95 does not apply. He bases his argument on the language of section 95.002.

Section 95.002, entitled "Applicability," provides:

This chapter applies only to a claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

*Id.* § 95.002. "Claim" is defined, for purposes of Chapter 95, as "a claim for damages caused by negligence[.]" *Id.* § 95.001(1). Hernandez's action, alleging negligence against Brinker and seeking damages caused by such negligence, is such a claim. There is no dispute that at the time of his fall, Hernandez was an employee of a contractor or that Brinker was the property owner. Thus, on a linear reading of section 95.002, through and including subsection (1), Hernandez's action appears to satisfy the elements of the chapter's applicability. On appeal, however, Hernandez's focus is directed, and our analysis now turns, to subsection (2).

Under subsection (2), the claim must "arise[ ] from the condition or use of an improvement to real property where the contractor ... constructs, repairs, renovates, or modifies the improvement." *Id.* § 95.002(2). Hernandez insists this language requires the claim to arise from the condition or use of the particular improvement on which the contractor is working. Using the facts of this case, Hernandez reads the statute as: "This chapter applies only to a claim ... that arises from the condition or use of *the roof* where the contractor or subcontractor constructs, repairs, renovates, or modifies *the roof.*" Hernandez maintains Chapter 95 does not apply because his claim arises from the condition or use of *the roof* where he was repairing *the air-conditioner.*

Brinker concedes that Hernandez was working to repair or modify the restaurant's air-conditioning system and that his alleged damages arise from the condition or use of the roof. Brinker contends, however, that Hernandez misconstrues the meaning of the term "improvement" as used in the statute. According to Brinker, the entire restaurant building is the "improvement," and the air-conditioner is a mere "fixture" to the building. Brinker relies on these definitions from Black's Law Dictionary:

> *Improvement:* A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement, costing labor or capital, and intended to enhance its value, beauty, or utility or to adapt it for new or further purposes. Generally has reference to buildings, but may also include any permanent structure or other development such as a street, sidewalk, sewer utilities, etc.[3]

> *Fixture:* An article in the nature of personal property which has been so annexed to the realty that it is regarded as part of the real property.... A thing is deemed to be affixed to real property when it is attached to it by its roots, imbedded in it, permanently resting upon it, or permanently attached to what is thus permanent, as by means of cement, plaster nails, bolts or screws. Goods are fixtures when they become so related to particular real estate that an interest arises in them under real estate law; e.g. a furnace attached to a house or other building; counters permanently affixed to a floor of a store, a sprinkler system installed in a building.[4]

Thus, in the context of this case, Brinker would read the statute as: "This chapter applies only to a claim ... that arises from the condition or use of *the building* where the contractor or subcontractor constructs, repairs, renovates, or modifies *the building (including fixtures subsumed as part of the improvement).*" Brinker contends section 95.002(2) makes Chapter 95 applicable here because Hernandez's claim arises from the condition of the restaurant and Hernandez was repairing or modifying (a fixture to) the restaurant.

As Hernandez notes, however, Brinker's dictionary-based, restricted construction of the term "improvement" finds no support in Texas jurisprudence. The Texas Supreme Court has stated:

> To constitute an improvement there must be a joinder of personalty with realty. It is critical to distinguish among the three concepts involved in determining whether an object is an improvement—the personalty, the realty to which the personalty is annexed, and the result, the improvement. There can be

**3.** BLACK'S LAW DICTIONARY 757 (6th ed. 1990).

**4.** BLACK'S LAW DICTIONARY 638 (6th ed. 1990).

no improvement without annexation to realty, and until personalty is annexed to realty, it by definition cannot be an improvement. Only upon annexation does the personalty lose its characteristics as personal property and become viewed as an improvement.

*Sonnier v. Chisholm–Ryder Co., Inc.*, 909 S.W.2d 475, 479 (Tex.1995).[5] Under this definition of improvement, many articles seeming to fall within Brinker's above-quoted definition of "fixtures" have been found to constitute an improvement. *See, e.g., Sonnier*, 909 S.W.2d at 479–83 (acknowledging jury finding that tomato chopper was an improvement when installed in commercial cannery); *Reames v. Hawthorne–Seving, Inc.*, 949 S.W.2d 758, 761–62 (Tex.App.-Dallas 1997, pet. denied) (holding conveyor belt on wheels was an improvement although only constructively annexed to realty); *Hernandez v. Koch Mach. Co.*, 16 S.W.3d 48, 52 (Tex. App.-Houston [1st Dist.] 2000, pet. denied) (addressing statute-of-repose defense posed by manufacturer of steel-slitting machine, installed at plant, which all parties agreed was an improvement under Texas law); *Citizens Nat'l Bank v. City of Rhome*, 201 S.W.3d 254, 259–60 (Tex.App.-Fort Worth 2006, no pet.) (holding fuel dispensers, attached to concrete slab at gas station premises, are improvements to realty and not subject to sale as personalty pursuant to tax warrant); *Brown & Root Inc. v.*

*Shelton*, —— S.W.3d ——, ——–——, 2003 WL 21771917 (Tex.App.-Tyler 2003, no pet.) (holding asbestos-containing fireproofing materials, applied to ceiling of plant, constitute an improvement to realty).[6] Indeed, the permanent attachment that gives an article its "fixture" status under Brinker's dictionary definition is a primary factor that makes the article an "improvement" under Texas law. *See City of Rhome*, 201 S.W.3d at 257–58 (citing *Logan v. Mullis*, 686 S.W.2d 605, 607–08 (Tex.1985), and holding that permanence is an "overriding element of consideration" in whether annexed personalty is an improvement); *Reames*, 949 S.W.2d at 761 ("although all improvements are not necessarily fixtures, any fixture, unless it is a trade fixture [that can be removed without injury to the property], is considered an improvement").

The roof and the air-conditioning system are separate improvements to real property. Section 95.002(2) states that Chapter 95 applies only to a claim "that arises from the condition or use of *an* improvement to real property where the contractor or subcontractor [repairs or modifies] *the* improvement." Therefore, pursuant to the plain language of section 95.002(2), Chapter 95 does not apply to a contractor's employee's claim against a property owner when the improvement the condition or use of which gives rise to the injury claim is not the same improvement the contrac-

---

**5.** In *Sonnier*, responding to a certified question from the Fifth Circuit, the Supreme Court concluded that a manufacturer whose product is annexed to realty by another party does not "construct" an improvement to real property so as to entitle the manufacturer to repose protection for persons who construct or repair improvements to real property. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.009 (Vernon 2002). The court thus reaffirmed that the product is an improvement when annexed to realty, but clarified that the manufacturer "constructs" the improvement, and is

entitled to repose, only if it also participates in the annexation.

**6.** Decisions pre-dating *Sonnier* reach similar results. *See First Nat'l Bank v. Whirlpool Corp.*, 517 S.W.2d 262, 266–67 (Tex.1974) (holding garbage disposal and dishwasher are improvements to real property); *Dedmon v. Stewart–Warner Corp.*, 950 F.2d 244, 249–50 (5th Cir.1992) (holding furnace, installed in residence, is an improvement under Texas law).

tor was at the premise to address at the time of injury.

The first judicial decision interpreting Chapter 95, which became effective in September of 1996, reached a seemingly contrary result. In *Fisher v. Lee and Chang Partnership*, 16 S.W.3d 198 (Tex. App.-Houston [1st Dist.] 2000, pet. denied), the employee of an air-conditioning contractor suffered personal injuries when he fell from a ladder he was using to reach roof-mounted equipment. In the employee's suit against the property owner and property manager, the trial court granted summary judgment for the defendants on the basis that section 95.003 shielded them from liability because there was no evidence they exercised or retained control over the contractor's work or knew of the danger.

On appeal, the employee argued that the trial court erred because Chapter 95 would apply (and thus evidence of control and knowledge would be relevant) only if he had been injured by the air-conditioner, the improvement on which he was working. To address the employee's argument, the court focused on language of section 95.003 stating that a property owner is not liable for "injury . . . arising from the failure to provide a safe workplace." *Id.* at 201 (quoting Tex. Civ. Prac. & Rem. Code Ann. § 95.003). The court declared that the ladder was an unsafe part of the employee's workplace, that his injury thus arose from the defendants' failure to provide a safe workplace, and that "[t]he statute does not require that the defective condition be the object of the contractor's work." *Id.* (footnote omitted). In conclusion, the court stated:

> [Sections] 95.002 and 95.003 are consistent and may both be read to provide protection from liability if the injury arose from the contractor's work on an improvement to real property. Here, it

did. Appellant used the ladder to reach the roof to perform his job, the repair of air conditioning units.

*Id.*

The court then addressed Chapter 95's legislative history, quoting this statement, among others, from debates in the House of Representatives.

> "If there is an incident that is not related to the work being done by the contractor and subcontractor, then this chapter does not apply to that. So if you have an explosion that's not related to anything that the contractor and subcontractor are doing for their purpose of being there, then this chapter would not apply." (Debate on S.B. 28, House of Representatives, 74th Leg., R.S. Trans. II–157–58 (May 3, 1995) (statement of Rep. Junell).)

*Id.* at 201–02. Because Representative Junell did not suggest, "as does appellant, that the injury-producing defect must be the object of the contractor's work," the court concluded "the statute would apply to injuries *related to* the contractor's work." *Id.* at 202 (emphasis added).

The court further noted that the legislators discussed a hypothetical situation similar to that presented in *Fisher*. In the hypothetical situation, a contractor was injured when scaffolding collapsed as he was using it to reach his work site. Representative Combs declared that the property owner would be liable only if it had exercised control over the contractor's work and knew the scaffolding was defective. *Id.* (citing Debate on S.B. 28, House of Representatives, 74th Leg., R.S. Trans. II–153 (May 3, 1995) (statement of Rep. Combs)). Noting that the ladder from which Fisher fell was like the scaffolding discussed in the hypothetical situation, and that in both scenarios that claimed injuries arose from "the failure to provide a safe workplace," the court concluded Chapter

95 applies even when the premises defect does not exist within the specific object the contractor is repairing. *Id.*

In its conclusion, the *Fisher* court stated,

> The legislative history supports the conclusion that section 95.003 protects appellees. The scaffolding example, used by the legislators in discussing the applicability of the statute, described a tool used for construction, not an improvement that was being repaired or modified itself. The ladder here is like the scaffold in the legislative history. It provided appellant a means to reach his work site. It was not the object of his work. Nevertheless, appellant's injuries arose from "the failure to provide a safe workplace." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.003.
>
> We conclude that both the plain language and the legislative history of Chapter 95 are contrary to appellant's contention that the premises defect must exist within the specific object the contractor is repairing.

*Id.* at 202. Because there was no evidence that the owner exercised control over the contractor's work or that the owner had actual knowledge of a danger, the court affirmed the summary judgment for the owner.

In affirming the summary judgment, it appears that the *Fisher* court's analysis overly extended Chapter 95's reach. The court relied on Representative Combs's statement that the statute would apply when scaffolding, a workplace tool, caused injury, *see id.*, rather than relying on the express language in section 95.002 that Chapter 95 applies only where a claim arises from "a condition or use of *an improvement.*" *See* Tex. Civ. Prac. & Rem. Code Ann. § 95.002 (emphasis added). The court again eschewed the relevant language in section 95.002 when it instead relied on Representative Junell's statement that Chapter 95 would apply if the injury-producing defect "relates to" a contractor's work. *Id.* The Code Construction Act permits consideration of legislative history, *see* Tex. Gov't Code Ann. § 311.023(3) (Vernon 2005), but it does not permit elevating legislative debate statements over unambiguous statutory language. *See Canal Ins. Co. v. Hopkins,* 238 S.W.3d 549, 563 (Tex.App.-Tyler 2007, pet. denied) (stating that "isolated statements by individual legislators must be weighed against the clear language" of a statute) (citing *Fleming Foods of Tex., Inc. v. Rylander,* 6 S.W.3d 278, 284 (Tex.1999)). Finally, although the *Fisher* court stated, "Sec[tion] 95.002 clarifies the scope of sec[tion] 95.003," *Fisher,* 16 S.W.3d at 201, it gave overriding effect to section 95.003. *Id.* at 202 (relying on phrase "failure to provide a safe workplace" in section 95.003 in holding Chapter 95 applied to claim involving fall from ladder at workplace).

Relying on *Fisher,* several courts have applied section 95.003's protection to property owners sued by employees of contractors and subcontractors that were injured by the condition or use of an improvement that the employee was not repairing or modifying. *See, e.g., Clark v. Ron Bassinger, Inc.,* No. 07–03–0291–CV, 2006 WL 229901, at *2–3 (Tex.App.-Amarillo, Jan. 31, 2006, no pet.) (mem. op.) (affirming summary judgment when plumbing employee fell through roof skylight that had been hidden with tar paper by a roofing contractor); *Phillips v. Dow Chem. Co.,* 186 S.W.3d 121, 131–32 (Tex.App.-Houston [1st Dist.] 2005, no pet.) (affirming summary judgment for plant owner in action to recover for death of subcontractor's employee who fell from scaffolding as she was leaving the site of her work on a large vessel under repair by the subcontractor); *Kelly v. LIN Television of Tex., L.P.,* 27

S.W.3d 564, 570 (Tex.App.-Eastland 2000, pet. denied) (affirming summary judgment for owner of television tower in action arising from contractor's employees' deaths in tower's collapse during contractor's replacement of tower's broadcasting antenna). In fact, since Chapter 95 became effective, there has not been a reported case against a property owner to which the statute has been found *not* to apply.[7] Hernandez writes in his brief, "Although the Texas courts maintain the fiction that there exist claims to which Chapter 95 does not apply, since *Fisher*, they have never identified a single one. Instead, they have moved steadily to a situation in which a premises owner can effectively booby-trap his own property yet escape liability for his actions under Chapter 95."

Other courts have been perplexed by *Fisher*. In *Spears v. Crown Central Petroleum Corp.*, 133 Fed.Appx. 129 (5th Cir. 2005) (per curiam), the Fifth Circuit contemplated the applicability of Chapter 95 to the claim of an independent contractor's employee who tripped on steel-braided hoses as he walked from the refinery unit at which he worked to a tool shed in a separate part of the refinery premises. The employee contended that Chapter 95 did not apply to protect the refinery owner, because his injury, caused by his tripping on the hoses in his path, did not arise from the condition or use of the improvement on which he worked. Addressing the district court's grant of summary judgment to the owner, the court stated:

Although [the owner] points to an abundance of Texas cases concluding that any injury relating to the work done on the premises is covered under chapter 95, "relating to" is a much broader proposition than is "arising from the condition or use of the improvement."

This case is illustrative. The injury undoubtedly was related to the work [the employee] was doing, because it occurred while he was leaving his work site. Nevertheless, the alleged cause of the injury (*i.e.*, the hoses) was neither a condition nor a use of the heat exchanger, which was the improvement on which [the employee] worked.

*Id.* at 130–31 (footnote omitted). The court was obviously troubled by the disconnect between section 95.002 and Texas intermediate courts' conclusions that any injury "relating to work done on the premises" is covered under Chapter 95. But, in the absence of Texas Supreme Court authority, the Fifth Circuit, sitting in diversity jurisdiction, was compelled to respect those decisions. It thus affirmed the summary judgment in the refinery owner's favor. *Id.* at 131.

This court has addressed Chapter 95 in only a handful of cases. Most recently, in *Vanderbeek v. San Jacinto Methodist Hospital*, 246 S.W.3d 346 (Tex.App.-Houston [14th Dist.] 2008, no pet.), we affirmed a summary judgment against a plumbing contractor's employee who suffered chemical burns from a caustic substance contained in a pipe he removed as part of his plumbing work. In *Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688 (Tex.

---

**7.** Some courts may have focused on *Fisher's* pronouncement that an owner is protected if the injury-producing condition "relates to" the injured contractor's work. This would also explain how property owners have received protection under Chapter 95 when the employee's injury resulted from use of a tool or other instrumentality that is unquestionably not an improvement (as required by the statute). *See Admire v. H.E. Butt Grocery Co.*, No. 01–02–00060–CV, 2003 WL 203514 (Tex. App.-Houston [1st Dist.] Jan. 30, 2003, no pet.) (mem. op.) (concluding property owner was protected from liability when air-conditioning contractor's employee fell from ladder after completing work on roof).

App.-Houston [14th Dist.] 2004, pet. denied), this court, sitting en banc, affirmed a take-nothing summary judgment for a paper-mill owner in an action by a pipe-repair company's employees for injuries relating to the inhalation of toxic gases dripping from the pipes. In *Ellwood Texas Forge Corp. v. Jones*, 214 S.W.3d 693 (Tex.App.-Houston [14th Dist.] 2007, pet. denied), we reversed the trial court and rendered judgment against an air-conditioning contractor's employee who was injured in a fall while performing his work at a steel plant. In *Bishop v. Nabisco, Inc.*, No. 14–03–00639–CV, 2004 WL 832916 (Tex.App.-Houston [14th Dist.] Apr. 20, 2004, no pet.) (mem. op.), we modified and affirmed a take-nothing judgment in favor of a bakery owner and against a demolition contractor's employee who fell from an upper floor of the bakery through the cover of a large hole created when the contractor dismantled certain mixing equipment. And we affirmed a summary judgment in favor of a refinery owner sued by a subcontractor's employee who tripped on a gasket he had removed from a heat exchanger in *Ashabranner v. HydroChem Industrial Services, Inc.*, No. 14–03–00762–CV, 2004 WL 613026 (Tex.App.-Houston [14th Dist.] Mar. 30, 2004, no pet.) (mem. op.).

In only one of these cases did we expressly address section 95.002 and the applicability of Chapter 95. The injured party in *Vanderbeek v. San Jacinto Methodist Hospital* argued that Chapter 95 applies only when the property owner's liability is based on the negligence of another party, such as an independent contractor other than the one employing the plaintiff, rather than on the owner's affirmative independent negligence. Vanderbeek claimed that the hospital committed an independent act of negligence by pouring a caustic substance into a sink the contractor had marked "out of order," and that Chapter 95 thus did not apply to preclude the owner's liability. We rejected *Vanderbeek's* argument, finding nothing in the statutory language, or legislative history, to support application of Chapter 95 only to cases involving allegations of passive or vicarious liability. *Vanderbeek*, 246 S.W.3d at 351–52.

In four of our Chapter 95 decisions, the facts could not support the argument Hernandez makes here, because the employee's injury was caused by a condition or the use of the improvement he was repairing or modifying. *See Vanderbeek*, 246 S.W.3d at 348–49 (involving plumbing contractor injured by caustic substance in plumbing pipes); *Dyall*, 152 S.W.3d at 695–96 (involving injury to pipe-repair subcontractor's employees from substance leaking from pipes); *Bishop*, 2004 WL 832916 at *1 (addressing demolition contractor's injury from fall through hole in floor resulting from demolition); *Ashabranner*, 2004 WL 613026, at *1 (involving subcontractor's fall over piece of equipment he had removed from heat exchanger). *Ellwood Texas Forge* is our sole decision involving a claim that at least arguably arose from the condition or use of one improvement while the plaintiff was constructing, repairing, renovating, or modifying a different improvement. *See* 214 S.W.3d at 695–96. The *Ellwood* plaintiff, however, failed to raise and brief the argument presented here.

### Conclusion

Hernandez's claim arises from the condition of the roof, but Hernandez did not repair or modify the roof. Hernandez repaired the air-conditioning system. Thus, under the plain language of section 95.002(2), Chapter 95 does not apply to Hernandez's claims. Brinker is not entitled to summary judgment by proving its lack of control or its lack of actual knowl-

edge, the elements of section 95.003. We reverse the summary judgment in Brinker's favor and remand to the trial court for further proceedings.

ANDERSON, J., concurring.

YATES, J., dissenting.

JOHN S. ANDERSON, Justice, concurring.

I concur with the outcome of the plurality opinion, but reach the same result on different grounds. Because appellee failed to establish all the elements of his affirmative defense, I would hold the trial court erred when it granted appellee's motion for summary judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

In March of 2005, appellant was employed as an air conditioning mechanic for Accurate Air Systems in Houston, Texas. Appellee allegedly owned and operated a Chili's restaurant at 1040 W. Sam Houston Parkway in Houston, Texas. Appellee contracted with Accurate Air Systems to perform routine maintenance and repairs to the air conditioning unit located on the roof of the Chili's restaurant. On March 10, Accurate Air Systems assigned appellant to replace a compressor motor in appellee's air conditioning unit.

Appellant arrived at the Chili's, briefly said hello to the manager, and then climbed a ladder to the roof of the restaurant. Appellant removed the original compressor and planned to carry it toward a point on the roof from which he could lower it to the ground. As he stepped away from the air conditioning unit with the compressor in his arms, the roof collapsed and a portion of his body fell through the opening.

Appellant filed the underlying lawsuit against appellee alleging it failed to exercise ordinary care in maintaining the restaurant premises, specifically the roof. He claimed that as a result of his fall, he suffered injuries to his left leg, lower back, and right shoulder, foot, knee, and hip. Appellant sought damages for physical impairment, medical expenses, past and future lost wages, mental anguish, and physical pain.

Discovery revealed that appellee had previously scheduled replacement of the restaurant's roof because it was leaking and had at least one "soft spot." However, the restaurant's manager did not tell appellant before he started work that there were any problems with the roof.

Appellee filed a motion for summary judgment contending that Chapter 95 of the Texas Civil Practice and Remedies Code precluded appellant's recovery. *See* Tex. Civ. Prac. & Rem. Code Ann. § 95.001 *et seq.* (Vernon 2005). Specifically, appellee argued it could have no liability to appellant because appellant himself testified appellee exercised no control over his work on the air conditioning unit. *See id.* § 95.003 (precluding property owner's liability for injury to employee of a contractor unless owner exercises control over performance of the work and had actual knowledge, but failed to adequately warn, of the danger that resulted in the injury).

The trial judge granted appellee's summary judgment motion, which appellant timely appeals.

### DISCUSSION

### A. Did Appellee Conclusively Prove Chapter 95 Applies to Appellant's Claims?

Because it is dispositive of this appeal I address appellant's fourth issue first. In appellant's fourth issue, he argues appellee failed to meet its burden of conclusively proving Chapter 95 applies as a matter of

law because it was pleaded as an affirmative defense.

## 1. Standard of Review

Under the traditional summary judgment standard of review, a movant has the burden to show at the trial level that there are no genuine issues of material fact, and he is entitled to judgment as a matter of law. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.*, 988 S.W.2d 746, 748 (Tex.1999). In determining whether there is a genuine fact issue precluding summary judgment, evidence favorable to the non-movant is taken as true and we make all reasonable inferences in his favor. *Id.* We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex.2005). A defendant is entitled to summary judgment if it conclusively negates at least one of the essential elements of a plaintiff's cause of action or conclusively establishes all necessary elements of an affirmative defense. *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex.1995). Only when the defendant establishes its right to summary judgment, does the burden shift to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex.1995).

## 2. Analysis

Appellant correctly asserts appellee failed to meet his burden of proving the applicability of Chapter 95. The defendant in a Chapter 95 case must establish Chapter 95 applies to him. *Rueda v. Paschal*, 178 S.W.3d 107, 111 (Tex.App.-Houston [1st Dist.] 2005, no pet.). Once the defendant has shown the applicability of Chapter 95, a plaintiff has the burden to establish both prongs of Section 95.003. *Id.* A defendant proves Chapter 95 applies by presenting evidence conclusively establishing that all elements of Section 95.002 have been met. *See Vanderbeek v. San*

*Jacinto Methodist Hosp.*, 246 S.W.3d 346, 352 (Tex.App.-Houston [14th Dist.] 2008, no pet.). Section 95.002, titled "Applicability" requires a claim:

(1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor of subcontractor; and

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

Tex. Civ. Prac. & Rem. Code § 95.002. A "claim" is a claim for damages caused by negligence. *Id.* § 95.001(1). A "property owner" is a person or entity that owns real property primarily used for commercial or business purposes. *Id.* § 95.001(3).

In summation, appellee has the burden of proving: (1) appellee is a "property owner", (2) appellant is holding appellee liable for personal injury, (3) appellant was hired as an independent contractor, (4) appellant's claims arise from a condition of an improvement on appellant's property, and (5) appellee was repairing or modifying the improvement. *See id.* §§ 95.001, 95.002.

In this case, appellee attached three pieces of evidence to his motion for summary judgment: the affidavit of Todd Shaler, manager of Chili's restaurant; excerpts from plaintiff's objections and answers to defendant's first set of interrogatories; and excerpts from appellant's deposition. All three of these documents focus on appellee's lack of control over appellant's work, an element of Section 95.003. *See id.* § 95.003(1). As mentioned above, the burden of proving both prongs of Section 95.003 shifts to appellant only after appellee has first proved

Section 95.002. *Rueda*, 178 S.W.3d at 111.

Nowhere in appellee's attached summary judgment evidence does appellee establish it is the "property owner" of the Chili's restaurant where appellant's alleged injuries occurred. In its evidence, appellee assumes its status as a property owner is established. Because proving property owner status is an element of Section 95.002, a mere assumption of status is not sufficient. *See id.* § 95.002(2). Appellee has failed to meet its burden of proving Chapter 95 applies. Therefore, I would hold summary judgment was improperly granted because appellee did not conclusively establish all necessary elements of its affirmative defense. *See Cathey*, 900 S.W.2d at 341.

## CONCLUSION

For the reasons stated above, I would hold the trial court erred in granting appellee's motion for summary judgment. Accordingly, I agree the summary judgment should be reversed, albeit for reasons different from those stated in the plurality opinion. Thus, I respectfully concur in the result only.

1. I also dissent from the concurrence. The concurrence concludes that summary judgment was improper because no summary judgment evidence established that Brinker was the property owner. This argument was not made by either party, either in the trial court or on appeal. It is improper to reverse on unpreserved, unassigned error. *See Walling v. Metcalfe*, 863 S.W.2d 56, 58 (Tex.1993) ("We have held repeatedly that the courts of appeals may not reverse the judgment of a trial court for a reason not raised in a point of error."); *Tello v. Bank One, N.A.*, 218 S.W.3d 109, 118 (Tex.App.-Houston [14th Dist.] 2007, no pet.) (stating that issues not raised to trial court during summary judgment proceedings cannot be raised for the first time on appeal).

2. *See Vanderbeek v. San Jacinto Methodist Hosp.*, 246 S.W.3d 346, 348, 350–51 (Tex. App.-Houston [14th Dist.] 2008, no pet.)

LESLIE B. YATES, Justice, dissenting.

The plurality concludes that chapter 95 of the Texas Civil Practice and Remedies does not apply to Hernandez's claims against Brinker because his claims arise from the condition of the roof rather than the air conditioning system that he was repairing. Because I disagree with this analysis, I respectfully dissent from the plurality.[1]

The plurality concludes that under section 95.002(2), the improvement that gives rise to the injury claim must be the same improvement the contractor was at the premise to address at the time of the injury. This is based on the plurality's narrow interpretation of the concept of improvement that rejects the idea of a building or overall structure as an improvement, focusing instead on the parts of the structure and concluding that the roof and air conditioning system are separate improvements. I agree with the plurality that a roof or an air conditioning system can be separate improvements. However, it is also clear that an entire structure can be an improvement.[2] Thus,

(chapter 95 case; contractor injured while working on pipes; hospital building was improvement); *Clark v. Ron Bassinger, Inc.*, No. 07–03–0291–CV, 2006 WL 229901, at *1–2 (Tex.App.-Amarillo Jan. 31, 2006, no pet.) (mem. op.) (chapter 95 case; contractor injured while working on plumbing fixtures on roof and stepped through skylight opening; house was improvement); *see also Norris v. Thomas*, 215 S.W.3d 851, 854–55 (Tex.2007) (discussing house as improvement under Property Code and homestead law); *Matagorda County Appraisal Dist. v. Coastal Liquids Partners, L.P.*, 165 S.W.3d 329, 335 (Tex.2005) (discussing buildings and fixtures as improvements under Tax Code); *Kelly v. LIN Television of Tex., L.P.*, 27 S.W.3d 564, 570 (Tex. App.-Eastland 2000, pet. denied) (citing *Black's Law Dictionary* in defining improvement in a chapter 95 case).

when section 95.002(2) states that chapter 95 applies only to a claim arising from "the condition or use of an improvement" where the contractor "constructs, repairs, renovates, or modifies the improvement," it is unclear whether the improvement contemplated is the overall structure, part of the structure, or both. Because the statutory language is ambiguous, it is appropriate to seek guidance from legislative history in interpreting it. *See Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651–52 & n. 4 (Tex.2006) (considering legislative history in statutory interpretation appropriate where statutory language is indefinite, ambiguous, or nebulous).

The 74th Legislature passed a sweeping tort reform package, including Senate Bill 28. *See Dyall v. Simpson Pasadena Paper Co.*, 152 S.W.3d 688, 699 (Tex.App.-Houston [14th Dist.] 2004, pet. denied). Chapter 95 was part of Senate Bill 28, and in the debate on the floor of the House of Representatives before the final reading and passage of the bill, one of its sponsors, Rep. Combs, explained the purpose of chapter 95:

> [I]t recognizes the fact that there are a number of property owners who do not exercise control over construction projects beyond simply hiring someone to do it, and you do not have any knowledge of any defect on the property. In that case, there is no liability to the property owner for personal injury, death, or property damage to a contractor, subcontractor, or an employee of those who are working on that piece of property who constructs, repairs, etc. an improvement on there.

Debate on Tex. S.B. 28 on the Floor of the House of Representatives, 74th Leg., R.S. (May 3, 1995) (statement of Rep. Combs) (tape 103 available from House of Repre-

sentatives Video/Audio Department), *quoted in Fisher v. Lee & Chang P'ship*, 16 S.W.3d 198, 201 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). Rep. Combs repeatedly emphasized the need to provide a way for a property owner not actively involved with the property to hire a contractor without assuming liability for injuries caused by conditions of which the owner was unaware. Rep. Turner, on the other hand, was concerned that chapter 95 would have unintended consequences, such as allowing a plant owner to hire contractors to perform all its work, turn a blind eye to safety, and escape liability for injuries caused by a plant explosion. *See id.* (statements of Reps. Combs and Turner). After an extensive exchange between Rep. Combs and Rep. Turner, Rep. Junell, a Senate Bill 28 co-sponsor, revisited this issue during the next day's floor debate in response to a question from Rep. Eilan about the "legislative intent" of the bill. Debate on Tex. S.B. 28 on the Floor of the House of Representatives, 74th Leg., R.S. (May 4, 1995) (statements of Reps. Eilan and Junell) (tape 104 available from House of Representatives Video/Audio Department). Rep. Junell further clarified the bounds of chapter 95:

> If there is an incident that is not related to the work being done by the contractor and subcontractor, then this chapter does not apply to that. So if you have an explosion that's not related to anything that the contractor and subcontractor are doing for their purpose of being there, then this chapter would not apply.

*Id.* (statement of Rep. Junell), *quoted in Fisher*, 16 S.W.3d at 202.

Far from "isolated statements by individual legislators,"[3] the idea that chapter

---

**3.** *Cf. Canal Ins. Co. v. Hopkins*, 238 S.W.3d 549, 563 (Tex.App.-Tyler 2007, pet. denied)

(discounting senator's statement made in

95 was intended to apply to injuries related to a contractor's work was the culmination of an extended discussion over two days between several legislators, including two sponsors. This legislative history clearly indicates that it was important to chapter 95's sponsors to distinguish between injuries to a contractor that were related to the work being done and those that were not, and it supports a broader interpretation of section 95.002(2) than suggested by the plurality, which narrowly interprets the improvement at issue and requires the specific improvement actually cause the injury.

I would conclude that chapter 95 applies here because Hernandez's injury was sufficiently related to the work for which he was hired. Although Brinker did not hire Hernandez to repair the damage to the roof, it did hire him to repair the air conditioning unit, which was on the roof. Thus, the job for which Brinker hired Hernandez necessarily required that he be on the roof. Hernandez was injured as he was performing this work when he fell through a portion of the roof right next to the air conditioning unit. This is factually similar to other cases in which courts have found that such an injury was included within chapter 95. *See Bryan v. Shell Offshore Inc.*, 179 Fed.Appx. 906, 907, 909 (5th Cir.2006) (holding chapter 95 covered injury to contractor hired to renovate offshore oil platform who stepped through wooden deck board in course of work); *Clark*, 2006 WL 229901, at *1–2 (concluding chapter 95 applied to claim of contractor who stepped through concealed skylight opening while on roof to work on plumbing fixtures). Hernandez claims that following this relatedness rationale would essentially nullify chapter 95. We need not decide in this case whether other courts have gone too far in applying this

committee on an issue never discussed by the

standard. *See, e.g., Spears v. Crown Cent. Petroleum Corp.*, 133 Fed.Appx. 129, 130–31 (5th Cir.2005) (finding chapter 95 covered claim of contractor injured after tripping over hose while walking to work site); *Franks v. Chevron Corp.*, Civil Action No. 3:06–cv–506, 2007 WL 2330296, at *6–7 (S.D.Tex. Aug. 13, 2007) (holding chapter 95 applied to claim of contractor injured on vessel transporting him to work site on offshore oil platform). I would merely hold that in this case, Hernandez's injury from falling through the roof in the course of performing work that must be done on the roof is sufficiently related to his reason for being on the premise to be covered by chapter 95.